Dorothy Christine **ECHARD**, Personally, and as Personal Representative of Robert L. Echard, Deceased, Respondent,

v.

**BARNES–JEWISH HOSPITAL,**
Appellant.

No. ED 79788.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 20, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 8, 2002.

Application for Transfer Denied
April 1, 2003.

Williams Venker & Sanders LLC, Paul N. Venker, Lisa A. Larkin, St. Louis, MO, for appellant.

Suelthaus & Walsh, P.C., Richard G. Byrd, St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Barnes–Jewish Hospital ("BJH"), appeals the judgment, after a jury trial, of the Circuit Court of the City of St. Louis in favor of respondent, Dorothy Christine Echard ("plaintiff"). Plaintiff, both individually and as the representative of the estate of her husband, Robert L. Echard ("husband"), sought damages arising out of an alleged medical malpractice that occurred during husband's admission at BJH. The jury awarded $78,000 to plaintiff individually and $43,799.01 to husband's estate. We affirm.

On October 22, 1993, husband, a forty-two-year-old disabled minister, was admitted to BJH [1] for surgery on his left knee. Husband, who weighed approximately 450 pounds at the time, had a history of knee problems dating back to high school. Husband was diagnosed with degenerative arthritis in both knees around 1974. In 1984, husband had a surgery in which his right knee was removed and his bones were fused leaving his right leg in a permanently straight position. Prior to husband's admission to BJH in October 1993, he had three surgeries on his left knee. Additionally, in the summer of 1993, husband fell at home on his left knee and fell again on his left knee in a gas station parking lot.

Following the fall at the gas station, husband consulted with Dr. Charles Sutherland, who recommended husband have surgery on his left knee. On October 22, 1993, Dr. Sutherland performed a partial knee replacement at BJH. The surgery involved opening the knee and replacing a portion of the left knee joint, suturing the two layers of subcutaneous tissue and stapling the outer layer of skin. A drain was inserted to remove blood from husband's knee following the surgery. The drain was removed on October 24, 1993.

After the surgery, husband remained hospitalized and an immobilizer splint was placed on his left knee. During the first few days after the operation, if husband needed to be placed in a wheelchair, four orderlies would assist him. Physical therapy notes entered one day following surgery stated "[d]oubt he could tolerate the

1. Husband was admitted to Barnes Hospital for knee surgery before being transferred later to Jewish Hospital of St. Louis for rehabilitation. In 1996 Barnes–Hospital and Jewish Hospital of St. Louis merged to become Barnes Jewish Hospital. Therefore, in order to avoid confusion, we will refer to BJH as one entity for the purposes of this appeal.

pressure at this time on his left lower extremity to go sit to stand." Post-surgery notes also reflected that husband could not be transferred from bed without the assistance of a wooden sliding board and orderlies. Husband had a limited range of motion in his left knee and no range of motion in his right knee due to the right leg being previously fused.

On October 27, 1993, husband was discharged to the rehabilitation unit of BJH. At that time, there was no indication of bleeding at the surgical site nor was there an indication of a hematoma. A hematoma is a collection of blood under the skin, which occurs over a period of time, and is a common occurrence after surgery.

Upon being discharged to the rehabilitation unit, husband was met by Nurse Pam Dowling, the assistant nurse manager of the rehabilitation unit. Nurse Dowling made an assessment of husband based upon her observations, husband's medical chart and information from husband himself. The assessment included checking husband's vital signs, his mobility, and any pain he was experiencing. Nurse Dowling also observed the stapled incision on husband's left knee which, at the time, was not bandaged and was without a leg immobilizer. Husband's transfer orders which, in regard to his ability to transfer, had the box next to "bed to chair" checked. However, the box regarding husband's ability to transfer from a sitting to standing position was not checked.

While still seated in a wheelchair, husband needed to use the bathroom. Due to husband's size, Nurse Dowling decided to have him use a bedside commode rather than take him into the bathroom. Nurse Dowling, along with another female nurse, stood on either side of husband's wheelchair. Nurse Dowling planned to have husband stand up from the wheelchair, and while holding onto a walker, use the bedside commode.

What happened next was disputed at trial. Nurse Dowling testified that neither she nor the other nurse assisted husband when he began "shifting" in his wheelchair. In her notes, Nurse Dowling referred to husband "doing push up in wheelchair." Additionally, she noted that husband "did not even move buttocks off wheelchair."

However, husband would later tell plaintiff that he told Nurse Dowling that he had not gotten out of his wheelchair without the assistance of a "lift team" composed of four orderlies. Husband also told plaintiff that he attempted to stand up and upon putting pressure on his left leg he felt a tearing and popping in his left knee.

After the attempt to transfer husband to the bedside commode from his wheelchair, there was a flow of blood from husband's incision on his left knee and he cried out in pain. The two layers of subcutaneous sutures tore through husband's tissue at the surgical site causing what is known as a "wound dehiscence."

After husband cried out in pain, he was moved from his wheelchair to the bed with the assistance of five persons. Husband was then transferred back to the surgical unit for emergency surgery. Prior to the emergency surgery, Dr. Sutherland made the following entry in husband's surgical notes "[d]ischarged to Jewish Rehabilitation this a.m., but when over there patient put pressure on left leg and damaged the left retinaculum.[2] To be repaired in OR now." The surgical report of Dr. Sutherland indicated the presence of a tense hematoma which extended into the knee joint and was evacuated during surgery.

Husband stayed at BJH after his emergency surgery on October 27, 1993. Hus-

2. The retinaculum is the sac surrounding the knee joint.

band was discharged, after rehabilitation, on November 5, 1993. After discharge from BJH, husband resigned his position as a minister with a teen program. Also, husband complained of pain in his left knee.

On July 15, 1998, plaintiff and husband filed a petition against BJH alleging medical malpractice and loss of consortium.[3] The petition alleged that employees of BJH improperly lifted husband from wheelchair and during the course of this maneuver seriously re-injured his left knee. While this suit was still pending, husband died in an unrelated auto accident on September 13, 1999. On January 25, 2000, plaintiff, as personal representative of husband's estate, was substituted for husband.

Prior to both the settlement of his claim against the gas station and his death, husband responded to interrogatories prepared by BJH. Interrogatory number seven asked husband, in pertinent part, the following:

Describe each injury you claim to have suffered as a result of the act(s) of negligence alleged in your petition. Please differentiate to the extent possible said loss as a result of the fall at [the gas station] and the incident at [BJH] as alleged in your petition and for each injury state:

(a) Whether the injury is currently causing you any pain or suffering....

Husband answered, in pertinent part, the following:

I suffered severe muscle and joint injuries to my knee, which remains painful, stiff, and which has deteriorated. I also suffered pain that spread to my hip. I cannot differentiate the loss and pain I suffered because of my fall on the slippery floor at [the gas station] from the loss and pain I suffered because of the negligent acts of [BJH].

(a) Yes, the injury is currently causing me pain ....

On February 5, 2001, the case went to trial before a jury. Three witnesses testified for plaintiff: plaintiff herself, Nurse Dowling (who was also called by BJH as a witness), and plaintiff's expert, Nurse Patricia McCollom.[4]

BJH objected to Nurse McCollom's expert testimony believing it to be "dangerously close to having some kind of medical causation opinion come out of [Nurse McCollom's] mouth." A voir dire examination of Nurse McCollom was conducted outside the presence of the jury. After the voir dire, the trial court overruled BJH's objection as to whether plaintiff could ask Nurse McCollom if it was her opinion that the failure of BJH's employees in the rehabilitation unit to meet the standard of care caused or contributed to husband's wound dehiscence. The following, in pertinent part, was the testimony of Nurse McCollom:

Q. [Plaintiff's Counsel]: ... Based upon your review of the documents in this case, the depositions, your experi-

---

**3.** An additional claim of negligence was filed against the gas station where husband fell on his left knee during the summer of 1993. That claim was subsequently settled and was not a subject of the trial or this case on appeal.

**4.** Nurse McCollom holds a master's degree in rehabilitation and is certified as a rehabilitation registered nurse. Nurse McCollom has

published over thirty articles in the area of rehabilitation nursing and has authored a textbook on the subject. Nurse McCollom has taught for thirty-five years in the field of rehabilitation nursing and has been involved in establishing the standards of practice for rehabilitation nurses. Additionally, Nurse McCollom has experience as a rehabilitation nurse caring for patients after knee surgery.

ence, your background, and the standards we discussed today have you formed an opinion within a reasonable degree of scientific certainty regarding the care given by [BJH] to [husband] on October 27th, 1993, have you reached an opinion?

[BJH's Counsel]: Object to, again, Your Honor, to the form of the question.

THE COURT: Overruled.

[Nurse McCollom]: Yes, I have achieved an opinion.

Q. [Plaintiff's Counsel]: Would you tell the jury what that opinion is?

A. There essentially were two standards that were violated. First of all, the nurses did not employ their skill and knowledge in providing an assessment that rehabilitation nurses would usually do in the same or similar circumstance. The second thing they did not do is provide the degree of care and caution that was necessary for a man in this man's condition, that is the 450 pounds, fused leg, and so on.

Q. This in respect to the assessment and transfer, is that correct?

A. Correct.

Q. Miss McCollom, again, based upon your review of the documents and everything I just described is it your opinion that [BJH's] failure to properly assess [husband] and their failure to properly assist him caused this injury on October 27th, 1993?

[BJH's Counsel]: Your Honor, I'm going to object to that question as leading. I want to renew my objection earlier about this issue.

THE COURT: I'll overrule the objection.

[Nurse McCollom]: It is my opinion that those two standards failing to be met caused the injury for this patient.

Two witnesses, along with Nurse Dowling, testified for BJH: BJH's expert witness, Dr. Eric Washington and Nurse Debbie Couper, who was the head nurse in the rehabilitation unit when husband was transferred.

Dr. Washington, a board-certified orthopedic surgeon who had performed hundreds of knee replacement surgeries, testified the rupture of husband's retinaculum was caused by a tense hematoma and the hematoma, which is a well-known complication of knee surgery, caused the dehiscence of husband's wound—not the negligence of BJH's employees. Dr. Washington conceded that, although it was not his opinion, it was "possible" the hematoma found during husband's emergency surgery could have formed subsequent to the incident in the rehabilitation unit.

As a rebuttal to Nurse Dowling's testimony, plaintiff was called to testify regarding what husband told Nurse Dowling about getting in and out of the wheelchair. Prior to plaintiff's rebuttal testimony, a voir dire examination of plaintiff was held outside the presence of the jury. After the voir dire examination, the trial court determined husband would have been a competent witness and the statements he made would have been admissible if he was available to testify. The trial court permitted plaintiff to testify as to what husband told her in a telephone conversation shortly after his leg was injured in the rehabilitation unit. BJH, outside the presence of the jury, objected to the testimony citing both hearsay and Missouri's "deadman statute".

During plaintiff's in-court rebuttal testimony, plaintiff testified, without an objection from BJH, that husband told her that he told the nurse "that he could not get up on his own" and "[i]n the past hasn't [gotten up from his wheelchair to standing]

without the help of the lift team." Furthermore, plaintiff testified that husband told her when "he placed his foot on the floor he attempted to lift himself up from the wheelchair and as he lifted himself that he felt like a tearing or popping in the like muscle area right beside the knee and I guess up the thigh."

The jury found in favor of plaintiff and awarded $78,000 to her individually and $43,799.01 to husband's estate. BJH filed a motion for judgment notwithstanding the verdict or in the alternative, a motion for a new trial. The trial court denied these motions. BJH appeals.

■ BJH's first point on appeal argues that the trial court erred in denying their motion for judgment notwithstanding the verdict because plaintiff failed to submit sufficient evidence to properly support the medical malpractice claim against BJH. Three elements must be established by plaintiff to prove medical malpractice: 1) an act or omission of the defendant failed to meet the required medical standard of care; 2) the act or omission of the defendant was performed negligently; and 3) the act or omission caused the plaintiff's injury. *Mueller v. Bauer*, 54 S.W.3d 652, 656 (Mo.App. E.D.2001). BJH contends the verdict is unsupported by the evidence because plaintiff failed to properly prove the element of causation. We disagree.

■ The standard of review based on a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo.App. E.D.2000). In order to make a submissible case a plaintiff must present substantial evidence for every fact essential to liability. *Id.* In determining whether a plaintiff has made a submissible case, this court views the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. *Id.* at 339. This court will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Id.* Where reasonable minds can differ on the question before the jury, we will not disturb the jury's verdict. *Id.* The evidence and inferences must establish every element of plaintiff's case and not leave any issue open to speculation. *Coggins*, 37 S.W.3d at 339. A judgment notwithstanding the verdict is a drastic action, and will only be granted when reasonable persons could not differ on a correct disposition of the case. *Id.*

In support of their first point on appeal, BJH asserts that plaintiff solely relied on Nurse McCollom to provide expert witness testimony. BJH argues that Missouri law prohibits a nurse from providing medical opinions on either medical causation or the proper standard of medical care by a physician. BJH contends the trial court erred in permitting the jury verdict, based on the testimony of Nurse McCollom, to stand.

■ We must first address whether BJH properly objected during Nurse McCollom's testimony regarding causation of husband's injury. "The only objections to evidence that can be considered on appeal are those that were properly raised in the trial court." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 650 (Mo.banc 1997). To be considered on appeal, an objection must be specific and must call the attention of the trial court to the reason for the objection. *Egelhoff v. Holt*, 875 S.W.2d 543, 551 (Mo.banc 1994).

■ Although BJH objected to Nurse McCollom testifying regarding causation following her voir dire examination, BJH's objections to her testimony at the time the causation questions were asked in the presence of the jury were vague and unrelated to their argument on appeal. When

plaintiff's counsel asked Nurse McCollom about whether BJH's failure to properly assess and assist husband caused his injury, BJH objected to the question as "leading" and stated "I want to renew my objection earlier about this issue." BJH's objection immediately prior to this objection was to the form of the question. BJH argues objections were made in limine, at sidebars, and during voir dire as to Nurse McCollom's ability to testify as to medical causation; therefore, there was no waiver of BJH's objections to the testimony. However, BJH cites no authority for this assertion. Because BJH failed to make a specific objection to Nurse McCollom's ability to testify during her in-court testimony, BJH's argument regarding Nurse McCollom's testimony is not preserved for appeal. Therefore, we need not consider whether the jury properly relied on Nurse McCollom's expert testimony regarding the cause of husband's injury.

In the alternative, BJH also argues that plaintiff was wrongly permitted by the trial court to rely on the "sudden onset"[5] doctrine to prove medical causation. Furthermore, BJH asserts the only competent trial evidence as to the cause of husband's injury was that of Dr. Washington who testified the hematoma caused husband's wound dehiscence—not the negligence of BJH's employees. However, we need not address the merits of these arguments by BJH in support of their first point relied on because, based upon our standard of review, there was sufficient causation evidence presented by plaintiff to support the trial court's denial

of BJH's motion for judgment notwithstanding the verdict.

Usually, the test for a causal connection between a defendant's negligence and a plaintiff's injury is whether the evidence shows that the injury would not have been sustained but for the negligence. *Delisi v. St. Luke's Episcopal–Presbyterian Hosp., Inc.,* 701 S.W.2d 170, 175 (Mo.App. E.D.1985). "[A] plaintiff may prove causation by circumstantial as well as direct evidence." *Id.* The question of causation becomes a jury question when the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred; however, such results did occur. *Id.*

Nurse Dowling testified that the transfer orders had only the box next to "bed to chair" checked. However, Nurse Dowling admitted she or the other nurse did not touch husband, who weighed approximately 450 pounds and who had both a fused right leg and a recently replaced left knee, when he began to push himself out of his wheelchair in order to use the bedside commode. Nurse Dowling also admitted it was her intention for him to use a walker to assist him with the transfer even though husband's medical chart did not indicate he had transferred from a sitting to standing position with the assistance of a walker. Additionally, Nurse Dowling testified that immediately following the attempted transfer husband cried out in pain and blood began flowing out of his incision. Also, Dr. Sutherland's notes regarding husband's emergency surgery stated husband "put pressure on the left

---

**5.** The "sudden onset" doctrine states that lay testimony may be sufficient to permit a finding of a causal relationship between an accident and a medical condition. *Brickey v. Concerned Care of Midwest, Inc.,* 988 S.W.2d 592, 596 (Mo.App. E.D.1999). This lay testimony may be sufficient only when the facts fall

within the understanding of lay persons. *Id.* When a party suffers a sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding and expert testimony is required. *Id.*

leg and damaged left retinaculum" while in the rehabilitation unit. Furthermore, the jury heard plaintiff's rebuttal testimony, to be discussed below, which conflicted with BJH's version of the events in the rehabilitation unit.

This circumstantial and direct evidence, coupled with Nurse McCollom's expert testimony, could lead a jury to determine that if certain things were properly done, husband's injury would not have occurred. We will not disturb the jury's verdict nor take such drastic action as to find error in the trial court's denial of BJH's motion for judgment notwithstanding the verdict because reasonable minds could differ regarding the correct disposition of this case. Point denied.

BJH's second point on appeal argues that the trial court erred in denying their motion for judgment notwithstanding the verdict and motion for a new trial because plaintiff failed to prove proximate causation. BJH contends plaintiff's evidence as to what injury and suffering husband sustained was inconclusive; therefore, plaintiff's claim must fail as a matter of law. Specifically, BJH contends husband's answer to BJH's interrogatory number seven was an admission that he could not differentiate between the injury sustained through the fall at the gas station and the injury sustained at BJH; thus, there were two equally likely causes of the injury. We disagree.

The standard of review for a denial of a motion for judgment notwithstanding the verdict was stated above. The standard of review for the denial of a motion for new trial is abuse of discretion by the trial court. *M.E.S. v. Daughters of Charity Services of St. Louis*, 975 S.W.2d 477, 482 (Mo.App. E.D.1998). A new trial will be available only upon a showing that trial error or misconduct of the prevailing party incited prejudice in the jury. *Kan-*

*sas City v. Keene Corp.*, 855 S.W.2d 360, 372 (Mo.banc 1993).

In order to make a prima facie showing of causation, a plaintiff must show the defendant's negligent conduct more probably than not was the cause of the injury. *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 901 (Mo.App. E.D. 1992). A defendant's negligence does not need to be the only cause of the plaintiff's injury, but may simply be a cause or a contributing cause. *Id.* A party is bound by their own testimony on matters of fact unless corrected or explained. *Wuerz v. Huffaker*, 42 S.W.3d 652, 655 (Mo.App. E.D.2001).

As discussed above, plaintiff submitted sufficient evidence as to causation to support the verdict of the jury. Husband stated in his answer to interrogatory number seven that he could not "differentiate the loss and pain [he] suffered because of [his] fall [at the gas station] from the loss and pain [he suffered] because of the negligent acts of [BJH]." Because husband was not able to differentiate between the loss and pain suffered due to the two injuries, five years after the injuries occurred, while he was answering interrogatories, does not mean BJH did not cause or contribute to an injury to husband's left knee on October 27, 1993. Husband, due to his death, was not afforded the opportunity to explain his answer. However, Nurse Dowling did testify that husband cried out in pain following the attempted transfer in the rehabilitation unit. Plaintiff also testified regarding husband's pain in his left knee. Furthermore, BJH's negligence need not be the sole cause of husband's injury, but simply a cause or a contributing cause. Therefore, a jury may believe husband injured his knee at the gas station, but the negligence of BJH's employees may have been a cause or con-

tributing cause of the injury he ultimately sustained.

BJH has not shown a trial error or misconduct of plaintiff to warrant the grant of a new trial. Furthermore, we will not disturb the jury's verdict nor take such drastic action as to find error in the trial court's denial of BJH's motion for judgment notwithstanding the verdict. Point denied.

BJH's final point on appeal argues the trial court erred in denying their motion for new trial because prejudicial evidence was allowed before the jury. BJH contends that it was reversible error for the trial court to overrule their objections to plaintiff's rebuttal testimony as to the statements of husband regarding what had happened to him in the rehabilitation unit. Specifically, BJH argues plaintiff's rebuttal testimony was hearsay and was inadmissible based upon Missouri's "deadman statute." We disagree.

The standard of review for the denial of a motion for new trial has been stated above. Section 491.010.2, RSMo 1994,[6] or the so-called "deadman statute" states, in pertinent part, the following:

> In any such suit ... where one of the parties to the contract, transaction, occurrence or cause of action ... is dead ... and the adverse party or his agent testifies with respect thereto, then any relevant statement or statements made by the deceased party ... shall not be excluded as hearsay, provided that in trials before a jury, the trial judge shall first determine by voir dire examination out of the hearing of the jury that the declarant would have been a competent witness and that his alleged statement or statements would have been admissible in evidence if he were available to testify.

In this case, husband died prior to the trial. Nurse Dowling, who was called by BJH, testified as an agent for the adverse party, BJH. Nurse Dowling testified with respect to the occurrence, which was her acts and omissions in caring for husband after he was transferred to the rehabilitation unit. Furthermore, Nurse Dowling testified, albeit in general terms, regarding her conversation with husband prior to his injury. The trial court conducted a proper voir dire examination of plaintiff regarding her rebuttal testimony and determined husband would have been a competent witness and that his statements regarding his conversation with Nurse Dowling would have been admissible if he would have been available to testify. BJH did not object to plaintiff's in-court rebuttal testimony. Assuming *arguendo*, BJH preserved their argument for appeal, it nevertheless fails. Plaintiff's rebuttal testimony falls squarely within the exception stated in section 491.010.2, and therefore, was properly admitted into evidence by the trial court. The trial court did not abuse its discretion by denying BJH's motion for new trial based upon the admission of plaintiff's rebuttal testimony. Point denied.

Based on the foregoing, we affirm the judgment of the trial court.

PAUL J. SIMON and CLIFFORD H. AHRENS, JJ. concur.

**6.** All further statutory references are to RSMo 1994, unless otherwise indicated.