CLIFFORD H. AHRENS, Judge.
 

 Washington University (“defendant”) appeals the judgment on a jury verdict in favor of Gail LaRose and Richard LaRose (collectively referred to herein as “plaintiffs”). Defendant claims that the trial court erred in denying its motion for judgment notwithstanding the verdict because plaintiffs failed to make a submissible case. Additionally, defendant claims that the trial court erred in denying its motion to amend the judgment, or in the alternative for remittitur or new trial because the judgment was excessive. Finally, defendant argues that the trial court erred in denying its motion for new trial because undue prejudice resulted from the court’s decision to allow Richard LaRose to testify twice during the trial, including once near the end of defendant’s case. Finding no error, we affirm
 
 [1]
 

 Mohammad Moaddabi, M.D. was Gail LaRose’s primary care physician. Dr. Moaddabi referred Gail to Benjamin Schwartz, M.D., one of Washington University’s physicians, for the evaluation of a potential rheumatological condition in June 2000. Dr. Moaddabi provided Dr. Schwartz with certain radiological reports for his evaluation of Gail, including a bone scan report which recommended a bilateral renal ultrasound. Dr. Schwartz examined Gail, and treated her rheumatological condition, but did not order the ultrasound as recommended by the bone scan report. In February 2001, Gail was ultimately diagnosed with ovarian cancer. Plaintiffs subsequently filed a petition alleging medical malpractice against Dr. Moaddabi, Dr. Schwartz and Washington University
 
 [2]
 
 for failure to timely diagnose her ovarian cancer and alleging loss of consortium on behalf of Richard LaRose. After trial, a jury returned a verdict in favor of plaintiffs and against defendant on each of their claims. Specifically, the jury assessed fifty percent fault to Washington University and fifty percent to Dr. Moaddabi. The jury awarded Gail LaRose $70,000.00 in past economic damages, $430,000.00 in past noneconomic damages, $400,000.00 for future economic damages, and $2,000,000.00 for future noneconomic damages. The jury determined that Gail lost a fifty-seven percent chance of recovery. On Richard LaRose’s claim for loss of consortium, the jury found that he did sustain damage as a result of the injury to his wife Gail, and awarded him $50,000.00 in past noneco-nomic damages and $200,000.00 in future noneconomic damages. The court entered its judgment on the jury’s verdict, reducing the amount of damages awarded to plaintiffs. The court found that the jury’s award of past economic damages for Gail’s claim exceeded the evidence, and reduced it accordingly. The court also reduced the damages awarded to both plaintiffs by
 
 *355
 
 multiplying the amount by the percentage of chance lost, as found by the jury. This amount was then reduced by the amount of fault assessed to Dr. Moaddabi, as a result of his settlement with plaintiffs. The amount of noneconomic damages was further reduced by the maximum limit set forth in section 538.210 RSMo (Cum.Supp. 2003), which at the time of judgment was $557,000.00. The court noted that it made no such reduction to the damages awarded to Richard because the amount was already less than this maximum limit. Thus, after the reductions made by the trial court, Gail LaRose was awarded a total of $690,908.56 in damages
 
 [3]
 
 , and Richard La-Rose was awarded $71,250.00
 
 [4]
 
 . The trial court subsequently denied defendant’s motions for judgment notwithstanding the verdict, for remittitur, new trial or to amend the judgment. Defendant now appeals.
 

 In its first point on appeal, defendant claims that the trial court erred in denying its motion for judgment notwithstanding the verdict because plaintiffs failed to make a submissible case.
 

 “The standard of review based on a trial court’s denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case.”
 
 Echard v. Barnes-Jewish Hosp.,
 
 98 S.W.3d 558, 565 (Mo.App.2002). To make a submissible case, a plaintiff must present substantial evidence to support every fact essential to liability.
 
 Id.
 
 In determining whether a plaintiff has made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff.
 
 Id.
 
 We will reverse the verdict of the jury only where there is a “complete absence of probative fact” to support the jury’s conclusion.
 
 Id.
 

 In the present case, defendant specifically challenges the sufficiency of plaintiffs’ evidence concerning defendant’s breach of the standard of care. Defendant argues that plaintiffs were required to establish, through substantial evidence, that Dr. Schwartz breached the standard of care exercised by other members of his profession under the same or similar circumstances. Defendant claims that the testimony of Gary Salzman, M.D., plaintiffs’ expert witness, was based upon inappropriate foundation and was not supported by proper authority. Additionally, defendant points out what it claims to be a “fatal inconsistency” in Dr. Salzman’s testimony. According to defendant, Dr. Salzman could not opine that Dr. Schwartz met the standard of care for his treatment of Gail LaRose’s potential rheumatologieal condition, and still testify that Dr. Schwartz failed to meet the standard of care with respect to the diagnosis of her ovarian cancer.
 

 In the present case, Dr. Salzman, an expert in the areas of internal medicine, pulmonary disease and critical care medicine, testified that after a finding of potential blockage of one of Gail’s ureters on a bone scan, Dr. Schwartz deviated from the standard of care in failing to either order an ultrasound for further evaluation, or recommend that one be ordered. Dr. Salzman stated that an internal medicine physician evaluating a patient would be required by the standard of care to investigate the finding on the bone scan by ordering an ultrasound.
 

 
 *356
 
 Dr. Salzman testified, based upon his clinical experience as an internal medicine physician, as to what other physicians, exercising the same degree of skill and learning would ordinarily use under the same or similar circumstances. Any argument by defendant regarding inconsistencies in Dr. Salzman’s opinions, or lack of authority speaks to the weight and credibility of Dr. Salzman’s testimony, which is a question for the jury.
 
 Davolt v. Highland,
 
 119 S.W.3d 118, 127 (Mo.App.2003).
 

 Additionally, defendant argues that in order to make a submissible case, plaintiffs were required to present substantial evidence that an ultrasound would have detected Gail’s ovarian cancer in June of 2000, and that Gail’s prospects would have been materially better if the diagnosis had been made at that time. Again, defendant argues that because of inappropriate foundation and inconsistencies in the testimony of plaintiffs’ experts, plaintiffs failed to present substantial evidence to support their claim.
 

 Both of plaintiffs’ experts testified that the ovarian cancer was present and diagnosable in June 2000. Dr. Salzman stated that more likely than not, the finding of potential blockage to one of Gail’s ureters on the bone scan performed in February 2000, was caused by the ovarian tumor that was compressing her ureter. He testified that his opinion was that if an ultrasound had been done to follow up this finding, the ovarian mass would have been detected and ultimately diagnosed as ovarian cancer. Additionally, Howard Ozer, M.D., an oncologist, testified as an expert for plaintiffs. Dr. Ozer testified that in June 2000, Gail’s ovarian tumor would have been detected by an ultrasound. He believed that the tumor was present in June 2000, and at that time, Gail would have had a sixty percent chance of living five years with the disease if it had been diagnosed.
 

 Based upon the testimony of Dr. Salz-man and Dr. Ozer, plaintiffs presented substantial evidence that Dr. Schwartz deviated from the standard of care, and that the cancer was present and diagnosable in June 2000. Therefore, the case was properly submitted to the jury, and the trial court did not err in denying defendant’s motion for judgment notwithstanding the verdict. Point denied.
 

 In its next three points on appeal, defendant asserts that the trial court erred in denying its motion to amend the judgment, or alternatively for remittitur or new trial because the judgment was excessive.
 

 The standard of review for a trial court’s denial of a motion to amend a judgment and for remittitur is for abuse of discretion.
 
 Brockman v. Soltysiak,
 
 49 S.W.3d 740, 744 (Mo.App.2001). Remittitur will be considered appropriate where the verdict of the jury is excessive because it “exceeds fair and reasonable compensation for plaintiffs ... damages.”
 
 Id.; (quoting Meyer v. McGarvie,
 
 856 S.W.2d 904, 908 (Mo.App.1993)).
 

 First, defendant claims that the judgment was excessive because the evidence did not support the jury’s determination that Gail LaRose lost a fifty-seven percent chance of recovery. Defendant argues that the fifty-seven percent assessment is not supported by the evidence because it necessarily incorporates events not attributable to the negligence of defendant. According to defendant, the loss of chance must only be calculated by determining the chance at the time plaintiff alleges the disease should have been diagnosed less the chance at the time the disease is actually diagnosed. We disagree.
 

 The cause of action of loss of chance of recovery was first recognized by the Missouri Supreme Court in
 
 Wollen v. DePaul
 
 
 *357
 

 Health Center,
 
 828 S.W.2d 681 (Mo. Banc 1992). In
 
 Wollen,
 
 the court acknowledged that statistical evidence regarding the chance of survival could not tell whether
 
 the
 
 decedent would have survived if properly diagnosed.
 
 Id.
 
 at 685. However, the court stated that, “[t]he issue is whether there is a permissible inference from the allegation of a statistical chance of recovery to the conclusion that death was caused by the negligence of defendant(s).”
 
 Id.
 

 Here, Dr. Ozer, plaintiffs’ expert, testified that he believed the ovarian tumor was present and diagnosable in June 2000, and at that time, Gail LaRose had a sixty percent chance of surviving five years with the disease had it been diagnosed. When Gail was ultimately diagnosed with ovarian cancer in 2001, Dr. Ozer testified that she had a forty percent chance of five-year survival. At the time of trial, Gail had suffered a recurrence of the disease, and Dr. Ozer stated that she only had a three to five percent chance of survival.
 

 Defendant argues that there is no evidence to show that the failure to diagnose the cancer in June 2000 proximately caused Gail’s recurrence in 2003. Defendant’s argument fails to take into consideration the very nature of the cause of action of loss of chance of recovery, and the nature of the disease of cancer. According to Dr. Ozer’s testimony, Gail had a sixty percent chance of surviving five years in 2000. He stated that she, therefore, had a sixty percent likelihood that she would not have the recurrence in 2003. When her cancer was ultimately diagnosed, Gail had a forty percent chance of five-year survival. Thus, she had a sixty percent likelihood of suffering a recurrence. The chance that she would suffer a recurrence increased by the alleged failure to diagnose the ovarian cancer, and she did, in fact suffer a recurrence, which further reduced her chances of recovery. Dr. Ozer testified that Gail lost the sixty percent chance of five-year survival because of the alleged failure to diagnose the ovarian cancer, and was living with a three to five percent chance of survival at the time of trial. Based upon this testimony, there was sufficient evidence to support the jury’s determination that Gail lost a fifty-seven percent chance of survival. Therefore, the jury was not confined to a determination of the chance of recovery lost based solely upon a calculation of the chance at the time plaintiffs allege the disease should have been diagnosed minus the chance at the time the disease is actually diagnosed. The jury’s determination that Gail lost a fifty-seven percent chance of recovery was supported by the evidence, and was not excessive.
 

 Next, defendant argues that the judgment was excessive with respect to Gail’s claim for impairment of ability to perform household services because there was insufficient evidence to submit such a claim.
 

 Physical impairment of a plaintiff’s ability to perform household duties has been recognized in Missouri as a compensable claim for damages.
 
 Collier v. Simms,
 
 366 S.W.2d 499, 500 (Mo.App.1963). The court in
 
 Collier
 
 essentially equated this loss of ability to a plaintiffs loss of ability to work or labor.
 
 Id.
 
 Defendant does not dispute that the loss of ability to work is a valid claim for damages pursuant to Missouri law. However, defendant argues that this element of damage remains subject to the same standard of proof as other claims for damages.
 

 Lost wages or lost earning capacity is defined as an “economic damage” pursuant to section 538.205 RSMo (2000). In its discussion of the recovery of lost wages, or the ability to work, the court in
 
 Fairbanks v. Weitzman,
 
 13 S.W.3d 313, 320 (Mo.App.2000), stated that evidence of the value of such loss must be reasonably certain and
 
 *358
 
 not based upon speculation. The court stated that the evidence must provide the jury with a basis for a reasonable estimate of the amount of the loss.
 
 Id.
 

 In the present case, there was sufficient evidence to provide the jury with a basis for a reasonable estimate of the loss of household services. Gail testified that she did all the housework prior to her chemotherapy treatments, and now her family helps with the work. Additionally, plaintiffs presented the testimony of Leroy Grossman, an economist, regarding certain damages. Grossman provided the jury with an opinion as to the present value of Gail’s loss of income based upon a figure of $10,000.00 in income stream. Although Grossman said that he was not testifying that the loss of Gail’s household services equaled $10,000.00, he testified that the value of those services could be more or less than that amount.
 

 Given Gail’s testimony regarding her household service, coupled with the testimony of Grossman regarding the present value of Gail’s potential income loss, the jury could make a reasonable estimate as to the loss Gail suffered as a result of her illness. The jury’s award of future economic damages was therefore, not excessive and was supported by the evidence.
 

 Defendant also claims that the award of damages for Gail’s loss of ability to perform household services was improperly included as future economic damage, and such damages should have been classified as noneconomic damage under Richard’s loss of consortium claim instead. We disagree. As discussed above, the court in
 
 Collier,
 
 discussed a wife’s ability to recover damages for her loss of ability to perform household services. 366 S.W.2d at 500. In its discussion, the court noted that, “[a]ny physical inability of a housewife to perform domestic duties must necessarily mean a physical inability to work and labor.”
 
 Id.
 
 at 499. Additionally, the court acknowledged that such impairment is a compensable item of damage to the wife, and not to her husband.
 
 Id.
 
 at 500. As previously stated, the loss of ability to work has been defined as an economic damage under section 538.205. Thus, the loss of ability to perform household services, or loss of ability to work, was properly included as an economic damage, recoverable by Gail.
 

 Finally, defendant argues that the judgment was excessive because Richard LaRose’s award of noneconomic damages should have been subject to the same statutory damages cap as was applied to the noneconomic damages awarded to Gail La-Rose.
 

 Section 538.210.1 provides that, “[i]n any action against a health care provider for damages for personal injury or death arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than three hundred fifty thousand dollars per occurrence for noneconomic damages from any one defendant. ...”
 

 The issue of the application of section 538.210 to the damages recovered from a loss of consortium claim has been previously addressed by the Western District in
 
 Wright v. Barr,
 
 62 S.W.3d 509 (Mo.App.2001). In
 
 Wright,
 
 a plaintiff and her husband brought a medical malpractice action and loss of consortium. The jury returned a verdict in favor of plaintiff on both claims. On appeal, the defendants claimed that because the loss of consortium claim of the husband was derivative, both plaintiff and her husband constituted one plaintiff under section 538.210 for purposes of the noneconomic damages cap.
 
 Id.
 
 at 536. The court in
 
 Wright
 
 found that although the loss of consortium claim was derivative, a spouse is not automatically entitled to damages for such a claim, and loss of consortium is a separate personal injury
 
 *359
 
 claim.
 
 Id.
 
 at 537. The court concluded that “the nature of [husband’s] claim as a derivative of [plaintiffs] claim does not require that the awards of noneconomic damages to each be considered as a whole under [section] 538.210. The statutory cap applies separately to the two separate claims because the plain statutory language dictates that the cap applies per plaintiff.”
 
 Id.
 
 at 538.
 

 Defendant acknowledges that the key limitation of the statutory language is that no
 
 plaintiff
 
 shall recover more than the statutory cap for noneconomic damages from any one defendant; however, defendant claims that we must apply the reasoning from the Missouri Supreme Court in
 
 Richardson v. State Highway & Transp. Com’n,
 
 863 S.W.2d 876 (Mo. banc 1993) instead of the reasoning set forth in
 
 Wright.
 
 We disagree.
 

 In
 
 Richardson,
 
 the Supreme Court interpreted that application of section 537.610, which limited recovery to parties injured by the operation of a motor vehicle or by the condition of public property, as opposed to other causes of injury. 863 S.W.2d at 879. Section 527.610 provided that liability of the state and its public entities “shall not exceed one million dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence ....”
 
 Id.
 
 at 880. The court in
 
 Richardson
 
 found that the language of the statute required that all claims, both “derivative and direct” arising from injuries to “one person in a single accident” were restricted to the $100,000.00 cap.
 
 Id.
 

 However, we do not believe
 
 Richardson
 
 applies to the present case. The court in
 
 Richardson
 
 based its decision on a statute dealing with limitations for injuries caused by actions other than medical malpractice. Additionally, while both statutes provide a limitation on recovery, the language of each statute is not the same. Therefore, the court’s reasoning in
 
 Richardson
 
 is distinguishable from the present case.
 

 In the present case, Richard LaRose was a separate plaintiff bringing an action for loss of consortium. Thus, there were two plaintiffs in this case, Richard LaRose and Gail LaRose. Based upon the plain language of section 538.210, and the court’s interpretation of this language in
 
 Wñght,
 
 we believe that the statutory cap on non-economic damages was appropriately applied to each individual plaintiff. The judgment was not therefore, excessive.
 

 In its final point on appeal, defendant claims that the trial court erred in denying its motion for new trial because undue prejudice resulted in the court’s decision to allow Richard LaRose to testify twice, including once near the end of defendant’s case. Defendant argues that such testimony improperly influenced the jury’s verdict.
 

 We review the trial court’s denial of a motion for new trial for abuse of discretion.
 
 Echard,
 
 98 S.W.3d at 567. “A new trial will be available only upon a showing that trial error or misconduct of the prevailing party incited prejudice in the jury.”
 
 Id.
 

 In the present case, the error complained of was the trial court’s decision to allow Richard LaRose to take the stand a second time, after the close of plaintiffs’ case. The trial court has discretion to allow a party to reopen his case for any purpose.
 
 Lay v. P & G Health Care, Inc.,
 
 37 S.W.3d 310, 328 (Mo.App.2000). An appellate court will not interfere with the decision of the trial court unless it appears that injury resulted to the party claiming error.
 
 Id.
 

 Here, there was no abuse of discretion in allowing plaintiffs to call Richard La-Rose to testify a second time. Plaintiffs
 
 *360
 
 were already going to reopen their case to present the testimony of Leroy Grossman, an economist. After Grossman testified, Richard took the stand. He was asked a total of nine questions, in an effort to present evidence to support his claim for the loss of companionship and society of his wife, Gail. From the record before us, there is no showing of injury to defendant’s case as a result of the brief testimony presented. Thus, the trial court did not abuse its discretion in allowing Richard LaRose to testify a second time. Point denied.
 

 The judgment of the trial court is affirmed.
 

 WILLIAM H. CRANDALL JR., J. and MARY R. RUSSELL, Special J., concur.
 

 [1]
 

 . Plaintiffs' motion to strike defendant's statement of facts is denied.
 

 [2]
 

 . Dr. Moaddabi settled the claim against him with plaintiffs and was dismissed with prejudice from the case. Dr. Schwartz was dismissed from the case with prejudice prior to its submission to the jury.
 

 [3]
 

 . Of this total amount, the court noted that $19,908.56 was awarded for past economic damages, $98,589.00 for past noneconomic damages, $114,000.00 in future economic damages, and $458,411.00 for future noneco-nomic damages.
 

 [4]
 

 . This award included $14,250.00 for past noneconomic damages and $57,000.00 for future noneconomic damages.