**John J. PILLA, Respondent,**

v.

**ESTATE OF Maria PILLA, Nicholas Pilla, et al., Appellants.**

**No. 48404.**

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 19, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 9, 1985.

Application to Transfer Denied May 29, 1985.

William H. Wyne, St. Louis, for appellants.

Daniel W. Brown, St. Louis, Mark Belz, Clayton, for respondent.

SMITH, Presiding Judge.

Two co-executors of the estate of Maria Pilla appeal from the action of the trial court ordering specific performance of an option contract given by Maria Pilla to her son John.

The option contract was contained in a lease executed between Maria, John, and another son Michael in 1974. It provided for a ten year lease of a 484 acre farm in Montgomery County, Missouri. The lease was to commence on January 5, 1975, with rent of $20,300 payable at the end of each lease year. The option allowed purchase of the farm by lessees for $390,000 at any time during the term of the lease "upon giving Lessor a 60 day written notice of intent to exercise the option." The entire agreement was to be binding upon the executors, administrators, heirs and assigns

of all parties to the agreement. On June 23, 1976, Michael assigned all his interests in the lease and option to John Pilla. Maria consented to this assignment. Maria died on November 28, 1979.

Two sons, Nicholas Pilla and Michael Pilla, and Pasqualina Polizzi Sexton, a daughter, were named in the will as executors and appointed to that position by the Probate Court. On August 11, 1980, the Probate Court entered an order authorizing the co-executors to take charge of the farm property to preserve the assets of the estate. John remained in possession of the farm pursuant to the lease. By that date John Pilla had orally advised the attorney for the estate of his desire to exercise the option "so the estate would have money to pay on the Federal Estate Tax." Oral expressions of intent to exercise the option continued to be made by John until January of 1983.

In 1982 John entered into a contract for sale of the property with a closing date of December 1, 1982. On November 23, 1982, the attorney for the estate mailed to the Internal Revenue Service a form 4422 applying for a certificate discharging the farm property from the estate tax lien. That document was signed by Nicholas Pilla as co-executor under a legend stating, "[u]nder penalties of perjury, I declare that I have examined this application, including accompanying schedules and statements, and to the best of my knowledge and belief it is true, correct and complete." That form listed John as the purchaser of the property for a consideration of $390,000. An accompanying statement contained the following sentence: "[a]s the option is being exercised as of December 1, 1982, it will be necessary for the estate to deliver a Warranty Deed conveying said property free and clear of all liens ..." The lien release for the property was not received from Internal Revenue Service prior to December 1, 1982.[1] The absence of the lien release prevented the December 1 closing.

Under the lease it was lessor's obligation to provide clear title.

On January 11, 1983, at a meeting with all executors and most devisees present John Pilla signed a handwritten statement "confirming that I am exercising my option to purchase the 484 acre farm in Montgomery County, Missouri." The statement also said, "This is pursuant to our prior understanding." On January 11, 1983, the rent payment due January 5 had not been made. A check bearing date of January 12, 1983, made payable to the "Maria Pilla Est." for $20,300 was given by John to Michael at some time after January 11, 1983. That check bears a statement in lieu of endorsement "Credited to the account of the within named payee in accordance with payee's instructions. Absence of endorsement guaranteed First Missouri Bank of Warren County Warrenton, Missouri." The record does not establish the disposition of the proceeds of the check other than they did not go to the estate account at Landmark Bank. There was some inference they may have gone to a separate estate account opened by Michael. On January 25, 1983, the attorney wrote each of the three co-executors mentioning the due date of the rental payment and inquiring whether any co-executor had received payment. On January 27, Michael responded that he had received payment, identifying the January 12 check. On February 1, in response to that letter the attorney for the estate recommended that the funds be immediately deposited to the estate account. The same suggestion was repeated in the attorney's letter of February 9 in response to Michael's letter that he didn't know where to deposit the money. At no time was any forfeiture of the lease suggested to or by any co-executor or to John Pilla.

Some reference needs to be made concerning Michael Pilla's status as a co-executor. Sometime prior to February 8, 1982, Michael tendered his resignation as co-executor. On February 8 the probate division

[1]. The record is not clear when a release was received but it was sometime after January 11, 1983.

of the Circuit Court entered an order as follows:

"A settlement to date of resignation having been ordered to be filed herein by Michael Pilla, Co-executor of the above estate, on or before March 2, 1982, the Court APPROVES said resignation and AUTHORIZES and DIRECTS Nicholas Pilla and Pasqualina F. Polizzi remaining Co-Executors to discharge all duties required by law respecting the estate of the above decedent ... as sole executors."

No settlement was filed by Michael.

On March 1, 1983, the Missouri Title Company advised each devisee that it was holding $390,000 as proceeds of sale of the farm land to be paid in equal shares to the heirs of Maria Pilla upon receipt of deeds either from all devisees or from the personal representatives. That money is still in escrow.

John Pilla brought this action to compel the three personal representatives to convey the farmland to him. The trial court ordered Nicolas Pilla and Pasqualina Polizzi Sexton as the remaining co-executors to so convey.

The defendants have raised several points on appeal. The main thrust of their argument, however, is that the failure of John Pilla to pay the rent due on January 5, 1983, prior to the written exercise of the option caused the option to be without consideration and therefore it could not be exercised on January 11, 1983. The trial court found as a fact that the rent had never been paid but concluded that the lease and option were severable and failure to pay the rent did not vitiate the right to exercise the option.

■ Neither party has addressed the issue of the need for a written exercise of the option so we will not base our decision on that issue. It is clear, however, that parties to an agreement may by their oral agreement or their conduct waive the provisions of a contract between them. This doctrine applies equally to provisions requiring written communications. *Julian v. Kiefer*, 382 S.W.2d 723 (Mo.App.1964) [9,

10]; *Brown v. George*, 260 S.W.2d 836 (Mo. App.1953) [2]. Here from 1980 on it is clear that all parties were aware of John's intention to exercise the option. By November of 1982 the parties had committed themselves to such exercise. John had entered into a contract of sale; the estate had sought a waiver under oath of the estate tax lien on the farm on the basis of an exercise of the option. The conduct of both parties at that time established their waiver of the written notice of exercise. *Priest v. Oehler*, 328 Mo. 590, 41 S.W.2d 783 (1931) [2–4]. We believe the judgment of the trial court is supported by that conduct alone.

■ However, we also find the judgment correct for an additional reason. While the trial court found no payment of the rent ever occurred, that finding was based solely upon the court's expressed legal conclusion that Michael was not a co-executor at the time of the tender of the check. Section 473.540.2(3) RSMo.1978, requires that an executor file a settlement "[u]pon his application to resign and before his resignation is accepted." Section 473.139 RSMo. 1978 allows the court to permit an executor to resign "after the filing of his final settlement as required by subdivision (3) of subsection 2 of section 473.540." Upon accepting the resignation the court "shall revoke his letters." Here no final settlement was ever filed by Michael and no order was issued revoking his letters. The language of Section 473.139 is mandatory and the court lacked the authority to accept the resignation in the absence of compliance with that section. Michael was still a co-executor on January 12, 1983, when he received John's check. The court's factual finding was erroneous because of the Court's erroneous conclusion of law concerning Michael's status as a co-executor.

■ It has been stated that the payment of rent in a lease containing an option to purchase is the consideration for the option. *Hathaway v. Nevitt*, 358 Mo. 202, 213 S.W.2d 938 (1948) [1–3]. It is also true that forfeitures are not favored in the law

and acceptance of rent after its due date and before declaration of forfeiture is a waiver of that forfeiture. *Lucas Hunt Village Co. v. Klein,* 358 Mo. 1054, 218 S.W.2d 595 (banc 1949) [4, 5]; *Brazeal v. Bokelman,* 270 F.2d 943 (8th Cir.1959) [4]. Here the check was accepted by a co-executor before any forfeiture was declared and the attorney for the estate specifically requested that it be deposited into the estate account.[2] Any forfeiture which might have occurred as a result of the failure to pay the rent on January 5, 1983, was waived and the provisions of the option were in full force and effect.

Defendants' remaining points deal either with matters in which the trial court's findings are supported by the evidence or by the law. We find no precedential value in reviewing them.

The trial court issued its order only to two of the three co-executors because of its erroneous conclusion of the status of Michael. All three executors participated at the hearing through counsel. We are authorized "to give such judgment as the court ought to give" and admonished to finally dispose of the case. Rule 84.14. We therefore direct that the order of the trial court be amended to add the name of Michael Pilla as a personal representative ordered to convey and as amended the judgment is affirmed.

SNYDER and SATZ, JJ., concur.

---

2. What has been done with the proceeds is a matter between the co-executor and the estate. It does not affect the validity of the payment made by John Pilla or the effect of acceptance of that payment by Michael.