Cynthia L. Martin, Judge
Jess Davis ("Davis") and Douglas Square II, LLC ("DSII") (collectively "Appellants") appeal from the trial court's entry of a judgment incorporating jury verdicts and determining court-tried equity claims in a dispute between Appellants and Medical Plaza One, LLC ("MPO") regarding performance of a settlement agreement and a ground lease. We affirm the judgment of the trial court as herein modified.
Factual and Procedural Background[1]
MPO is a Missouri limited liability company which was formed to build and operate a medical office building in Lee's Summit, Missouri. The medical office building was to be constructed on ground owned by DSII, also a Missouri limited liability company. Davis is the sole member of DSII. In connection with the arrangement, Davis was made a 40% member of MPO, and was named as MPO's managing member.
MPO and DSII signed a ground lease in October 2004 ("Ground Lease"). The Ground Lease was amended on March 4, 2005 to extend to MPO an absolute option to purchase the ground on which the medical office building was being constructed for the agreed upon amount of $650,000. Davis signed the Ground Lease and the amendment on behalf of MPO and DSII.
By 2012, disputes had arisen between Appellants and MPO regarding (among other things) the fact that Davis, in his capacity as managing member of MPO, had been paying DSII more monthly rent than was owed under the Ground Lease. In addition, Appellants had assigned the Ground Lease rents to BMO Harris Bank as security for a loan unrelated to MPO's *148 operations. The assignment of Ground Lease rents had exposed MPO and its members to a lawsuit filed by BMO Harris Bank to enforce the assignment of rents. As a result of these disputes, the members holding a majority interest in MPO removed Davis as the managing member on September 24, 2012, and named Mitchell Fiser ("Fiser") as the new managing member. Appellants then initiated a lawsuit against MPO and its individual members seeking dissolution of MPO, partition, and damages for breach of the Ground Lease for nonpayment of rent. MPO asserted counterclaims against Davis and DSII alleging breach of fiduciary duty, misappropriation of funds, and breach of MPO's operating agreement. In the meantime, MPO was required to interplead Ground Lease rent payments into court because BMO Harris Bank was claiming it had the right to collect the rents at the same time that Appellants were suing MPO for the rents.
On December 27, 2013, MPO, all of the members of MPO, Davis, and DSII entered into a written settlement agreement to resolve their disputes ("Settlement Agreement"). Relevant to this case, the Settlement Agreement required MPO to immediately authorize the release of $59,800 in interpleaded rent payments to BMO Harris Bank to facilitate a settlement between BMO Harris Bank, Davis, and DSII. It is uncontested that MPO performed this term of the Settlement Agreement.
The Settlement Agreement expressed that MPO's monthly rent obligation under the Ground Lease should always have been $3,520, and that Davis had been causing MPO to overpay rent for the period from October 2012 through October 2013, resulting in an overpayment in the total amount of $14,040.[2] Commencing with the November 2013 rent payment, DSII agreed to credit MPO's monthly Ground Lease rent obligation by $1,500 per month until the overpaid rent amount was recouped.
Central to the Settlement Agreement was Davis's agreement to be removed as a member of MPO. Section 1.D of the Settlement Agreement described the agreed upon process for acquiring and calculating the value of Davis's member interest as follows:
Jess Davis agrees to sell his interest in Medical Plaza for 40% of the net asset value of Medical Plaza, which includes the funds in the Medical Plaza bank account at time of closing, subject to Sections 1.E through 1.H below, and the net equity in the building, less accrued real estate taxes at time of closing. The net equity in the building will be determined by an appraisal of the building. The appraisal shall be a fair market value appraisal prepared by a qualified appraiser selected by a lending institution chosen by the Manager of Medical Plaza, Mitchell S. Fiser, using his discretion to find a lending institution providing the best terms for the potential refinancing to obtain the funds to purchase Davis'[s] interest in Medical Plaza; and all of the members of Medical Plaza will sign a Unanimous Written Consent in lieu of a meeting of the members, authorizing Medical Plaza to enter into this Agreement and to take all steps necessary to implement the terms of this Agreement. Each member of Medical Plaza, including Davis, may make recommendations *149 to Mitchell S. Fiser concerning potential lenders to fund the purchase of Davis'[s] interest in Medical Plaza.
When the Settlement Agreement was entered into, MPO's members knew that MPO owed approximately $2,680,360 on a loan for which the building served as collateral, and as to which MPO's members, including Davis, were personal guarantors. MPO's members, including Davis, were thus aware that MPO's net equity in the building would be determined by subtracting this loan balance from the building's appraised value. Though the evidence suggested that MPO's members anticipated that the building's appraised value would exceed the outstanding balance on MPO's loan, Section 1.D of the Settlement Agreement did not condition Davis's obligation to sell his 40% member interest in MPO on receiving a building appraisal that exceeded MPO's outstanding loan balance.
The Settlement Agreement did not expressly state that MPO would be exercising the purchase option in the Ground Lease in connection with Davis's sale of his 40% member interest in MPO. However, the Settlement Agreement referred to the Ground Lease in provisions that suggested the parties expected the severing of relations between Davis and MPO would also include the severing of relations between MPO and DSII. The Settlement Agreement provided that should Davis fail to timely close on the sale of his 40% member interest, MPO would be permitted to offset the price to be paid upon exercise of the purchase option in the Ground Lease by amounts Davis owed MPO (Section 1.H of the Settlement Agreement). The Settlement Agreement also included a provision that addressed the Appellants' agreement to correct a scrivener's error that had resulted in Appellants' erroneous conveyance of a portion of the land legally described in the Ground Lease to an unrelated entity. (Section 1.I of the Settlement Agreement). With respect to this provision, Appellants agreed to take steps to remediate the error "such that the Leased/Option Property is included as a portion of the property to be conveyed to [MPO] (as set forth in the Ground Lease) and may be included in any deed of trust obtained by [MPO] in connection with its exercise of the Option to Purchase."
Pursuant to Section 1.D of the Settlement Agreement, and in order to determine MPO's net equity in the building, Fiser contacted lenders who might be willing to fund the purchase of Davis's member interest in MPO and the purchase of the land from DSII. Consistent with the discretion afforded Fiser by the Settlement Agreement, Fiser chose First Citizens Bank as the potential lender. First Citizens Bank then employed processes required by law to select an independent appraiser to value MPO's building and the land. First Citizens Bank selected Valbridge Property Advisors ("Valbridge") as the appraiser.
When Davis learned the identity of the appraiser, he expressed disapproval, characterizing Valbridge as too conservative. Davis did not contend, however, that Valbridge had been selected through a process that failed to comply with Section 1.D of the Settlement Agreement.
Valbridge's appraisal determined the fair market value of MPO's building and the land on which it was constructed to be $2,660,000. The value assigned to the land was $650,000, as that was the value agreed upon by the parties in connection with the absolute purchase option set forth in the Ground Lease. Subtracting the value of the land from the total appraised value yielded an appraised value for MPO's building of $2,010,000. When netted against MPO's outstanding loan balance, *150 the building had a negative net equity value of $670,360.
Section 1.D of the Settlement Agreement provided that the value of Davis's 40% interest in MPO was to be calculated by offsetting amounts Davis owed MPO (as described in Sections 1.E, 1.F, 1.G, and 1.H of the Settlement Agreement) against Davis's 40% share of MPO's net asset value, an amount that included the building's net equity value. The building's negative net equity value virtually ensured that MPO had a negative net asset value. Because Davis's 40% interest in MPO's negative net asset value was a negative number, the "offset" of that amount by additional amounts Davis owed MPO pursuant to Sections 1.E, 1.F, 1.G, and 1.H of the Settlement Agreement meant that Davis would be required to pay MPO in order to be removed as a member of MPO and as a personal guarantor on MPO's loan.
Davis was unwilling to accept the building's appraised value determined by Valbridge. He advised Fiser that Integra Realty Resources ("Integra") had performed an appraisal of the building and land in 2010 and had arrived at a fair market value of $3,600,000. Though the Settlement Agreement did not obligate MPO to do so, Fiser contacted Integra and arranged for a second appraisal of MPO's building and the land on which it was constructed.
In the meantime, the Settlement Agreement had anticipated a closing date of February 28, 2014. Given MPO's willingness to secure a second appraisal, the parties entered into an addendum to the Settlement Agreement on February 26, 2014, extending the closing date by forty-five days to April 14, 2014, and substituting "April 14, 2014" for "February 28, 2014" in Sections 1.E, 1.F, 1.G, and 1.H of the Settlement Agreement.
The Integra appraisal determined the fair market value of MPO's building and the land on which it was located to be $2,650,000, using $650,000 as the agreed upon value for the land. The Integra appraisal thus yielded an appraised value for MPO's building that was $10,000 less than had been determined by Valbridge.
On April 14, 2014, counsel for MPO sent a letter to counsel for Davis and DSII outlining MPO's intention to move forward to close on the transactions anticipated by Settlement Agreement. In the letter, MPO expressed its willingness to work cooperatively with Davis to "select a final closing date to afford both parties the opportunity to consider final numbers and transaction documents." The letter noted that the delay in securing the Integra appraisal had interfered with the parties' ability to close by April 14, 2014, the closing date set forth in the addendum to the Settlement Agreement.
The April 14, 2014 letter calculated the value of Davis's 40% member interest in MPO. Using the formula set forth in Section 1.D of the Settlement Agreement, the letter added amounts Davis owed MPO pursuant to Sections 1.E, 1.F, 1.G, and 1.H of the Settlement Agreement to Davis's 40% share of MPO's negative asset value to determine that Davis was required to pay MPO $256,200 in order to be removed as a member of MPO and as a personal guarantor on MPO's loan.
The April 14, 2014 letter exercised MPO's purchase option as described in the Ground Lease, and netted $650,000, the agreed purchase price for the land, against the amount Davis owed MPO to be removed as a member of MPO, resulting in a net amount of $393,800 to be paid by MPO to Appellants at closing in order to acquire Davis's 40% member interest in MPO and the land owned by DSII.
*151 Appellants did not respond to MPO's April 14, 2014 letter. On April 22, 2014, MPO's counsel again wrote to Appellants' counsel advising that MPO intended to proceed to closing, and noting that Appellants' cooperation was required. The April 22, 2014 letter advised that if Appellants did not cooperate to facilitate closing, MPO would proceed accordingly.
In subsequent email communications, the parties' counsel settled upon May 22, 2014 as an agreed closing date for the transactions anticipated by the Settlement Agreement. Appellants' counsel continued to advise, however, that Davis did not agree that an accurate fair market value had been determined for MPO's building. Davis did not otherwise challenge the calculations set forth in MPO's April 14, 2014 letter, and did not challenge that MPO had exercised the purchase option described in the amendment to the Ground Lease. Davis confirmed during later trial testimony that he had no disagreement with the calculations set forth in the April 14, 2014 letter other than the building's appraised value; that he was satisfied with the manner in which MPO had exercised the Ground Lease purchase option; and that he had always anticipated that MPO would buy the land on which the building was located at the same time he was removed as a 40% member in MPO, as the parties' objective had been to sever all business relationships between them.
Beyond agreeing to May 22, 2014 as an extended closing date, Davis made no further efforts to close on the transactions anticipated by the Settlement Agreement. Davis contended that he had no obligation to close because the building appraised at an amount that was less than the balance owed on MPO's loan, and because it was never anticipated that he would have to pay MPO in order to be removed as a member. After the May 22, 2014 closing date passed, MPO ceased paying rent under the Ground Lease from and after June 1, 2014.
On May 30, 2014, MPO filed a lawsuit against Davis and DSII in the Circuit Court of Jackson County, Missouri. Davis and DSII filed counterclaims in response, and joined Fiser as a third-party defendant.
By the time of trial, MPO's claims against Davis and DSII were set forth in a first amended petition as follows: Count I (seeking specific performance of the Settlement Agreement); Count II (seeking damages for breach of the Settlement Agreement); and Count III (seeking damages for breach of the covenant of good faith and fair dealing implied in the Settlement Agreement). Davis and DSII's counterclaims were set forth in a pleading styled "second amended counterclaims" as follows: Count I (seeking damages from MPO for breach of the Ground Lease for non-payment of rent); Count II (seeking a declaratory judgment terminating the Ground Lease); Count III (seeking damages from MPO and third-party defendant Fiser for breach of the Settlement Agreement based on use of an appraisal that did not fairly calculate the building's value); Count IV (seeking damages from third-party defendant Fiser for breach of fiduciary duty); and Count V (seeking a declaratory judgment directing MPO and third-party defendant Fiser to afford access to records for inspection and copying).
Prior to trial, the parties agreed that MPO's Count I (seeking specific performance of the Settlement Agreement) and Appellants' counterclaims Count II (seeking a declaratory judgment terminating the Ground Lease) and Count V (seeking a declaratory judgment to inspect records) would be determined by the court in equity. The parties agreed to try all other *152 claims to the jury, leaving the equity claims to be determined post-jury verdict.
After all evidence had been presented to the jury, the trial court entered a directed verdict in favor of third-party defendant Fiser on Counts III and IV of Appellants' counterclaims. Davis and DSII contemporaneously agreed to voluntarily dismiss with prejudice Count V (the equity claim seeking a declaratory judgment to inspect records). As a result, at the close of the evidence, MPO's Counts II and III remained to be determined by the jury; Counts I and III of Appellants' counterclaims (against MPO only) remained to be determined by the jury; MPO's Count I remained to be determined by the court in equity; and Count II of Appellants' counterclaims remained to be determined by the court in equity.
The jury returned verdicts in favor of MPO and against Appellants on MPO's Count II for breach of the Settlement Agreement, and on MPO's Count III for breach of the implied covenant of good faith and fair dealing. The jury awarded MPO $150,000 in damages on each count.
The jury returned a verdict in favor of DSII and against MPO on Count I of Appellants' counterclaims for breach of the Ground Lease for nonpayment of rent, and awarded damages of $54,000. The jury returned a verdict in favor of MPO and against Appellants on Count III of the counterclaims which sought damages for breach of the Settlement Agreement for using an appraisal that did not determine fair market value of the building.
Following the jury verdicts, the parties extensively briefed the remaining issues to be determined by the court in equity. Ultimately, the trial court entered its judgment dated January 11, 2017 ("Judgment"). The Judgment incorporated the jury verdicts, and entered judgment in favor of MPO and against Appellants on Count I, MPO's claim for specific performance of the Settlement Agreement. The Judgment also entered judgment in favor of MPO on Count II of Appellants' counterclaims which had sought a declaration terminating the Ground Lease and ordering the payment of attorneys' fees for MPO's breach of the Ground Lease by not paying rent. With respect to Appellants' declaratory judgment claim, the trial court found that Davis and DSII were the first to breach the Ground Lease when they failed to close on the transactions anticipated by the Settlement Agreement, and that the failure to close was not in good faith and warranted the denial of equitable relief.
In connection with the judgment in favor of MPO ordering specific performance, the Judgment ordered Davis and DSII to close on the sale of Davis's member interest and on the sale of the land described in the Ground Lease pursuant to the calculations set forth in MPO's letter dated April 14, 2014, which was attached to and incorporated into the Judgment.[3] The Judgment ordered that MPO's monetary obligations to Appellants: (i) for $54,000 in unpaid rent due (based on the jury's verdict), (ii) for the amount calculated by the April 14, 2014 letter to acquire Davis's 40% interest in MPO and the land owned by DSII, and (iii) for a $1,000 discovery sanction, would be offset/reduced by $150,000, the damages *153 the jury awarded MPO on its claim for breach of contract,[4] and that this net amount would be paid to Appellants in exchange for Davis's 40% interest in MPO and for DSII's conveyance of the land described in the Ground Lease by warranty deed.
Davis and DSII filed a motion for judgment notwithstanding the verdict and/or for new trial which was denied by the trial court. This appeal follows. Other facts will be discussed as pertinent to the points on appeal.
Summary of Issues on Appeal and our Standard of Review
Appellants assert eight points on appeal. Our review of Points One through Six, which claim errors with respect to court-tried matters, is pursuant to the standard established by Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). Rissler v. Heinzler , 316 S.W.3d 533, 536 (Mo. App. W.D. 2010). "Under this standard, the 'trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law.' " Browning v. GuideOne Specialty Mut. Ins. Co. , 341 S.W.3d 897, 899 (Mo. App. W.D. 2011) (quoting Rissler , 316 S.W.3d at 536 ). We therefore "view the evidence in a light most favorable to the judgment and disregard all contrary evidence and permissible inferences." Id. (quoting Rissler , 316 S.W.3d at 536 ).
Our review of Point Seven, which challenges the trial court's refusal to submit an instruction requiring the jury to determine the fair market value of MPO's building, is de novo. Marion v. Marcus , 199 S.W.3d 887, 892-94 (Mo. App. W.D. 2006) (addressing Rule 70.02(a) which states that "[a]ll instructions ... shall be given or refused by the court according to the law and the evidence in the case"). "We will reverse only if the error resulted in prejudice and materially affected the merits of the action." Ploch v. Hamai , 213 S.W.3d 135, 139 (Mo. App. E.D. 2006).
Point Eight argues that submission of the breach of the implied covenant of good faith and fair dealing claim was not supported by the law or by sufficient evidence, and essentially challenges the trial court's denial of Appellants' motion for judgment notwithstanding the verdict. "The standard of review based on a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case." Echard v. Barnes-Jewish Hosp. , 98 S.W.3d 558, 565 (Mo. App. E.D. 2002). "In order to make a submissible case a plaintiff must present substantial evidence for every fact essential to liability." Id. "In determining whether a plaintiff has made a submissible case, this court views the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff." Id. "A judgment notwithstanding the verdict is a drastic action, and will only be granted when reasonable persons could *154 not differ on a correct disposition of the case." Id.
Point One
In their first point on appeal, Appellants claim that the trial court lacked subject matter jurisdiction to deny their counterclaim seeking a declaration terminating the Ground Lease based on a finding that Appellants were the first to breach the Ground Lease. Appellants argue that MPO's first amended petition did not plead breach of the Ground Lease and thus wholly failed to state a cause of action for breach of the Ground Lease, creating a defect that deprived the trial court of subject matter jurisdiction to consider the issue.
Appellants rely on AMG Franchises, Inc. v. Crack Team USA, Inc. , 289 S.W.3d 655 (Mo. App. E.D. 2009), a case which actually discredits Appellants' argument. AMG Franchises observed that at one time, the proposition urged by Appellants in this case was supported by "developed judicial authority within Missouri's appellate courts." 289 S.W.3d at 659. However, AMG Franchises went on to explain that the proposition urged by Appellants was abrogated by J.C.W. ex rel. Webb v. Wyciskalla , 275 S.W.3d 249 (Mo. banc 2009). AMG Franchises , 289 S.W.3d at 660.
In Webb , our Supreme Court made clear that "Missouri courts recognize [only] two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." 275 S.W.3d at 252. Subject matter jurisdiction is "the court's authority to render a judgment in a particular category of case," and "is governed directly by the [Missouri] constitution." Id. at 253. "Article V, section 14 [of the Missouri Constitution] sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal.' " Id. (quoting Mo. Const. art. V, section 14(a) ).
AMG Franchises applied Webb to conclude that "although [a]ppellants' first point on appeal is framed as an issue involving subject matter jurisdiction for failure to state a cause of action, the record before us supports the trial court's exercise of subject matter jurisdiction because the allegations made in the petition are civil matters, and the trial court had subject matter jurisdiction under Article V, Section 14 to hear civil matters." AMG Franchises , 289 S.W.3d at 661. Similarly, Appellants' contention that MPO's alleged failure to plead a breach of the Ground Lease extinguished the trial court's subject matter jurisdiction is untenable under Webb . The essence of Appellants' complaint is that the trial court erred in going beyond the pleadings, error that falls within the category of "jurisdictional competence," a concept discredited as a basis for restricting a trial court's subject matter jurisdiction to render a judgment in a civil case. Webb , 275 S.W.3d at 254. The error about which Appellants complain does not implicate the trial court's subject matter jurisdiction.[5]
*155 Appellants concede in their Reply Brief that their reliance on AMG Franchises was misplaced. They nonetheless attempt to distinguish Webb , arguing that there is a difference between a plaintiff's unsuccessful attempt to state a claim, and a plaintiff's failure to make any attempt to state a claim. Appellants argue that the latter scenario remains a matter of subject matter jurisdiction, because as to an unstated claim, there is no "case or controversy" before the trial court. Appellants' contention is strained and ignores that in this case, there was plainly a civil case or controversy before the trial court. As a part of resolving the civil case before it, the trial court reached a conclusion about which Appellants now complain. Appellants' complaint does not implicate the trial court's subject matter jurisdiction, and amounts to no more than a claim of legal error subject to traditional appellate review. "Mere error does not deprive a court of jurisdiction it otherwise possesses." State ex rel. State v. Parkinson , 280 S.W.3d 70, 72 (Mo. banc 2009). Because the trial court had subject matter jurisdiction to enter judgment in this case, including a judgment that made a finding that Appellants contend exceeded the pleadings, the first point on appeal is without merit.
It is worth noting that, in any event, the premise of Appellants' first point on appeal-that Appellants' breach of the Ground Lease was not before the trial court for determination-is flawed for several reasons. First, Appellants moved for directed verdict at the close of MPO's evidence and at the close of all of the evidence, arguing on both occasions that their breach of the Ground Lease had not been pleaded by MPO. The trial court denied the motion on both occasions. The trial court found that though breach of the Ground Lease was not pleaded by MPO as a part of its claim seeking damages for breach of the Settlement Agreement (Count II of the first amended petition), MPO did plead breach of the Ground Lease in connection with its equitable claim seeking specific performance of the Settlement Agreement (Count I of the first amended petition).[6] The trial court thus found that Appellants' breach of the Ground Lease was an issue to be determined in connection with claims being tried to the court in equity. Appellants have neither addressed nor challenged this ruling.
Second, in replying to Count II of Appellants' counterclaims requesting a declaratory judgment terminating the Ground Lease, MPO asserted the affirmative defenses of unclean hands, inequitable conduct, and prior breach of the Ground Lease by Appellants. Appellants concede in their Reply Brief that MPO pleaded breach of the Ground Lease as an affirmative defense to Appellants' equitable claim seeking to terminate the Ground Lease.
Third, Appellants injected in their own pleadings the issue of whether the purchase option described in the amendment to the Ground Lease should have closed. In Count III of Appellants' counterclaims, which sought damages for MPO's alleged breach of the Settlement Agreement by using an appraisal that did *156 not fairly calculate the value of the building, Appellants alleged that MPO's failure to perform the Settlement Agreement caused Appellants damage by delaying MPO's purchase of the land subject to the Ground Lease.[7]
Finally, a cursory review of the transcript reflects that Appellants' breach of the Ground Lease was tried by implied consent, even assuming the issue was not pleaded. "Trial by implied consent allows for issues not raised in the pleadings to be determined by the trial court when the party raising the issue offers evidence without objection by another party." Bone v. Dir. of Revenue , 404 S.W.3d 883, 886 (Mo. banc 2013). "Issues raised by implied consent are determined as if they were part of the pleadings even though no formal amendment was made to the pleadings." Id.
Davis testified during MPO's case-in-chief about the terms of the Ground Lease, about MPO's exercise of the purchase option in the Ground Lease in the April 14, 2014 letter, and that he believed the April 14, 2014 letter sufficiently exercised the purchase option. Davis testified that he had always expected that MPO would acquire the land from DSII at the same time it acquired Davis's 40% member interest in MPO, as the entire point of the Settlement Agreement had been to sever all business relationships between the parties. Davis's testimony was elicited by MPO without objection. In fact, Appellants' counsel also elicited testimony from Davis about the Ground Lease, and in particular, about the steps MPO was required to follow to exercise the purchase option in the Ground Lease. This evidence had no relevance other than to tend to prove or disprove whether Appellants breached the Ground Lease by failing to close. Appellants impliedly consented to the trial court's determination of this issue, even assuming, arguendo , that the issue was not pleaded by MPO.
Point One is denied.
Point Two
In their second point on appeal, Appellants contend that they were deprived of their constitutional rights to due process and trial by jury by the trial court's finding that Appellants breached the Ground Lease because this question of fact should have been submitted to the jury.
Appellants' constitutional challenge is not preserved for our review. "To properly raise a constitutional challenge, a party must: (1) raise the constitutional question at the first opportunity; (2) state with specificity the constitutional provision on which the challenge rests; (3) set forth facts showing the violation; and (4) preserve the question throughout the proceedings for appellate review." Peters v. Johns , 489 S.W.3d 262, 269 (Mo. banc 2016) (emphasis omitted). "The rule is intended to prevent surprise to the opposing party and to accord the circuit court an opportunity to fairly identify and rule on the issue." Id.
As previously noted, Appellants' motions for directed verdict at the close of MPO's evidence and at the close of all of the evidence, which sought to preclude the jury's consideration of whether they breached the Ground Lease, were denied. Based on the trial court's ruling, Appellants were aware that the trial court viewed the pleadings as sufficiently injecting *157 this issue in connection with the equity claims to be determined by the court. Despite this ruling, Appellants did not argue that their alleged breach of the Ground Lease was a question of fact that should be determined by the jury. Appellants made no effort to submit this fact issue to the jury by special interrogatory. Appellants did not argue that the failure to submit this fact question to the jury would deprive them of their constitutional right to trial by jury.
Following the entry of jury verdicts, the parties engaged in extensive briefing regarding the equity issues remaining to be determined by the trial court. The parties' briefs addressed whether MPO had validly exercised the purchase option described in the amendment to the Ground Lease as to permit the conclusion that Appellants breached the Ground Lease by failing to close. Appellants' post-verdict, pre-judgment briefs never alleged that the trial court's determination of this issue would violate their constitutional right to trial by jury.
Appellants first raised the constitutional concerns that are the subject of their second point on appeal in their post-Judgment motion for new trial. Plainly, Appellants failed to raise their constitutional challenges at the first opportunity, and thus deprived the trial court of an opportunity to timely consider the issues. Appellants' constitutional challenges are not preserved for appellate review.
Point Two is denied.
Point Three
In their third point on appeal, Appellants claims that the trial court erred in finding that MPO properly exercised the purchase option in the Ground Lease because this finding was against the weight of the evidence because MPO did not exercise the purchase option in accordance with the procedures described in the Ground Lease.
"The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." Ivie v. Smith , 439 S.W.3d 189, 206 (Mo. banc 2014). In reviewing a challenge to the weight of the evidence, the appellate court "defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations." Id.
In order to exercise the purchase option, the amendment to the Ground Lease provided that MPO "need only notify [DSII] in writing with ninety (90) days or more notice prior to the effective date of purchase, and sent certified mail, return receipt requested." In MPO's letter dated April 14, 2014, MPO notified Appellants that MPO was "prepared to exercise its option on the real property for the agreed upon amount of $650,000 and to offset the obligations arising under the [Settlement] Agreement." The letter did not identify an effective date of purchase, although the letter plainly sought to close as soon as possible, and thus less than ninety days after notice. The letter was not sent via certified mail. And the letter was not sent to DSII, but was instead sent to DSII's counsel. MPO does not contest that its exercise of the purchase option was not in strict compliance with the procedures set forth in the Ground Lease.
Despite MPO's uncontested failure to strictly comply with the procedure for exercising the purchase option described in the Ground Lease, the trial court found that MPO adequately exercised the purchase *158 option in its April 14th letter, and that the letter constituted proper notice of MPO's intent to exercise the purchase option. The trial court's conclusion is supported by the evidence and by the law.
Davis testified that he had no dispute with the sufficiency of notice by MPO to exercise the purchase option in the Ground Lease Agreement. Davis testified that MPO was permitted to express its intent to exercise the purchase option in an informal manner. Davis testified that MPO had sufficiently notified him of its intention to exercise the purchase option by virtue of the April 14, 2014 letter. Davis testified that had the April 14, 2014 not incorporated a building appraisal with which he disagreed, he "would sign [a] document [conveying the land to MPO] right now." Davis and Fiser testified that all parties anticipated that MPO would acquire the land at the same time it acquired Davis's 40% member interest in MPO, testimony borne out by the Settlement Agreement's references to the Ground Lease. Consistent with the parties' collective and uncontested understanding, the Valbridge appraisal and the Integra appraisal did not merely appraise the building MPO owned, but also appraised the land DSII owned. That was also the case with a third appraisal later commissioned by Davis. Davis testified that he wanted Valbridge to know that MPO was going to acquire the land pursuant to its purchase option because Davis believed that information would be beneficial to the appraised value of the building. Finally, as previously noted, Appellants' counterclaims alleged that Appellants' were damaged because MPO's breach of the Settlement Agreement delayed MPO's acquisition of the land described in the Ground Lease.
The trial court's finding that MPO adequately exercised the purchase option effectively recognized that even though the option was not exercised in strict compliance with the procedure described in the Ground Lease, Appellants were free to waive the technical requirements for exercise of the purchase option.[8] Pilla v. Estate of Pilla , 689 S.W.2d 727, 730 (Mo. App. E.D. 1985) (holding that in connection with contract terms addressing the manner in which an option was to be exercised, the "parties to an agreement may by their oral agreement or their conduct waive the provisions of a contract between them"). The weight of the evidence and the law support the trial court's conclusion that MPO's exercise of the purchase option set forth in the amended Ground Lease was adequate and sufficient.[9]
Point Three is denied.
*159 Points Four and Five
We discuss Points Four and Five collectively as both points allege error in denying Appellants' requested remedies for MPO's breach of the Ground Lease for nonpayment of rent.[10] Point Four argues that the trial court erred in refusing to terminate the Ground Lease, which would have had the effect of delivering ownership of MPO's building to Appellants. Point Five argues that the trial court erred in refusing to award Appellants attorneys' fees.
Count II of Appellants' counterclaims sought a declaration that the Ground Lease was terminated given MPO's nonpayment of rent. In post-verdict briefs addressing the matters that remained to be determined by the trial court in equity, Appellants also requested an award of attorneys' fees in connection with their declaratory judgment claim.[11]
Declaratory relief is an equitable remedy. Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co. , 464 S.W.3d 177, 189 (Mo. banc 2015). One of the chief remedial defenses to an equitable *160 claim is the defense of unclean hands. State ex rel. Leonardi v. Sherry , 137 S.W.3d 462, 471 n.8 (Mo. banc 2004). "A litigant with unclean hands generally is not entitled to equitable relief such as an injunction or declaratory judgment." Purcell v. Cape Girardeau Cty. Comm'n , 322 S.W.3d 522, 524 (Mo. banc 2010). Under this equitable principle, "[a] party who participates in inequitable activity regarding the very issue for which it seeks relief will be barred by its own misconduct from receiving relief." Id. (quoting City of St. Joseph v. Lake Contrary Sewer Dist. , 251 S.W.3d 362, 369 (Mo. App. W.D. 2008) ). "Such conduct as will disqualify a party from equitable relief need not be fraudulent, but simply indicative of a lack of good faith in the subject matter of the suit." State ex rel. Sasnett v. Moorhouse , 267 S.W.3d 717, 723 (Mo. App. W.D. 2008) (quoting State ex rel. KelCor, Inc. v. Nooney Realty Tr., Inc. , 966 S.W.2d 399, 404 (Mo. App. E.D. 1998) ).
The trial court was permitted to consider equitable principles in entertaining Appellants' request to terminate the Ground Lease and for an award of attorneys' fees in light of MPO's breach of the Ground Lease for nonpayment of rent. As addressed in connection with Appellants' third point on appeal, the trial court did not err in finding that Appellants were the first to breach the Ground Lease when they failed to close on the Settlement Agreement. The trial court found that Appellants' breach of the Ground Lease occurred as of MPO's April 14, 2014 letter. Alternatively, the evidence supports that the latest date on which the Appellants' breached the Ground Lease was May 22, 2014-the extended closing date agreed upon by the parties' counsel. Regardless the date used, Appellants' breach of the Ground Lease preceded (and precipitated) MPO's decision to stop paying rent on June 1, 2014. As MPO explained in its post-verdict briefing, but for Appellants' breach of the Ground Lease by refusing to close, MPO would have owned the land, and would have had no obligation to pay rent pursuant to the Ground Lease, from and after June 1, 2014.
The trial court concluded that Appellants were the first to breach the Ground Lease, and that their refusal to close on the transactions anticipated by the Settlement Agreement and Ground Lease demonstrated the absence of good faith. The trial court did not abuse its discretion or commit legal error in considering these circumstances to deny Appellants the equitable relief they sought by declaratory judgment.
Points Four and Five are denied.
Point Six
In their sixth point on appeal, Appellants argue that the trial court erred in awarding MPO both equitable and legal remedies for Appellants' determined breach of the Settlement Agreement. Appellants first contend that an award of specific performance was not proper because MPO did not establish that a monetary judgment would be inadequate to redress Appellants' breach of the Settlement Agreement. Appellants also contend that the trial court's specific performance award, which ordered performance of the Settlement Agreement pursuant to MPO's April 14, 2014 letter, improperly awarded MPO a double recovery.[12]
*161 Appellants first challenge the fact that both monetary damages for breach of the Settlement Agreement and specific performance of the Settlement Agreement were awarded. "[T]he general rule of law of contracts is well settled that in certain cases a breach of contract may give rise to two remedies." Magruder v. Pauley , 411 S.W.3d 323, 331 (Mo. App. W.D. 2013) (quoting Savannah Place, Ltd. v. Heidelberg , 122 S.W.3d 74, 81 (Mo. App. S.D. 2003) ). "One is an action at law for damages for the breach; the other is a suit in equity for the specific performance of the contract." Id. (quoting Savannah Place , 122 S.W.3d at 81 ). "[W]here there is an adequate remedy at law, a court lacks authority to grant equitable relief." Doe 1631 v. Quest Diagnostics, Inc. , 395 S.W.3d 8, 16 (Mo. banc 2013). However, "there is no prohibition against a court of equity decreeing both specific performance and awarding damages." Metropolitan St. Louis Sewer Dist. v. Zykan , 495 S.W.2d 643, 657 (Mo. 1973).
The record establishes that Appellants moved for directed verdict at the close of the evidence, challenging MPO's ability to ask for money damages for breach of the Settlement Agreement while also seeking specific performance of the Settlement Agreement in equity. MPO responded that it was entitled to ask the jury to award damages MPO incurred because Appellants did not timely close, as described in Sections 1.E-H of the Settlement Agreement.
Sections 1.E-H of the Settlement Agreement reflect the parties' agreement that Appellants owed MPO three amounts: $100,107 representing damages attributable to Davis's failure to lease property in MPO's building as promised at the commencement of the parties' relationship ("Failure to Rent" damages); $27,500 in attorneys' fees MPO incurred in the BMO Harris Bank litigation ("Attorneys' Fees" damages); and any overpaid rent paid to DSII and not yet recouped by MPO, which was in the amount of $6,540 by the time of the April 14, 2014 letter ("Overpaid Rent" damages). These provisions of the Settlement Agreement incentivized Appellants to timely close by noting that the Failure to Rent damages would be reduced to $60,064.20 if closing occurred by the date anticipated by the Settlement Agreement. In the event of a timely closing, the Settlement Agreement provided that the reduced amount of Failure to Rent damages, the Attorneys' Fees damages, and the Overpaid Rent damages would "offset" the amount calculated as Davis's 40% share of MPO's net asset value. However, if closing did not occur by the date set forth in the Settlement Agreement, and if the delay was attributable to Davis, Section 1.H of the Settlement Agreement provided that the full amount of the Failure to Rent Damages, the Attorneys' Fees damages, and the Overpaid Rent damages would be aggregated, and: (i) the collective amount would be offset first against distributions otherwise owed by MPO to Davis; and then (ii) any amount unrecovered by a distribution offset would be subject to a 6% interest rate and set off at the rate of $1,500 a month against MPO's monthly Ground Lease rent obligation; and then (iii) against the purchase price due for Davis's 40% member interest presuming a delayed closing, and then (iv) against the purchase price to be paid for the land pursuant to the Ground Lease purchase option, until the full damage amount was recouped.
In light of these Settlement Agreement provisions, MPO argued that Appellants' breach of the Settlement Agreement entitled *162 MPO to monetary damages as contemplated in Section 1.H, given a failure to timely close attributable to Appellants. The trial court overruled Appellants' motion for directed verdict in reliance on MPO's argument. Consistent with this ruling, in arguing the breach of contract and implied covenant of good faith and fair dealing claims to the jury during closing, MPO discussed the three categories of damage contemplated in Section 1.H of the Settlement Agreement.
The jury awarded MPO monetary damages for breach of the Settlement Agreement in the amount of $150,000.[13] This monetary award does not, however, adequately compensate MPO for Appellants' breach of the Settlement Agreement. Davis admitted that the purpose of the Settlement Agreement was to ensure Davis's extrication from MPO and the severing of all business ties between the parties. Fiser testified that, following the first lawsuit between the parties, it was obvious that MPO and Appellants needed to completely cut ties. Fiser stated that MPO wanted to sever ties with the Appellants because it was "an untenable situation to continue as is" and the differences between the parties were irreconcilable. All parties agreed that it was their anticipation that following closing on the Settlement Agreement, Davis would no longer be a member of MPO, and MPO would own the land that had been the subject of the Ground Lease. A money judgment for damages based on Appellants' failure to timely close on the transactions anticipated by the Settlement Agreement does not afford MPO the full benefit of its bargain-the severing of the parties' business relationships. The trial court's Judgment thus properly found that the monetary damages MPO sought from the jury for breach of the Settlement Agreement were inadequate and incomplete to afford MPO an adequate remedy at law. We reject Appellants' claim that it was error to permit MPO to obtain both monetary damages and specific performance for their breach of the Settlement Agreement.
We are sympathetic, however, to Appellants' second contention that the monetary damages verdict and specific performance judgment had the effect of awarding MPO a double recovery. The judgment enforcing the Settlement Agreement directed performance of the Settlement Agreement "in accordance with the calculations of [the April 14, 2014 letter]." The calculations in the April 14, 2014 letter presumed a timely closing. The April 14, 2014 letter thus calculated the amount to be paid Appellants by first calculating the value of Davis's 40% interest in MPO's net asset value; by then offsetting that amount by the reduced Failure to Rent damages, the Attorneys' Fees damages, and the Overpaid Rent damages; and by then offsetting that amount by $650,000, the agreed upon value of the land.
By ordering Appellants to perform the Settlement Agreement per the terms of the April 14, 2014 letter, while at the same time ordering that the amount owed to Appellants pursuant to the April 14, 2014 letter should be reduced by the $150,000 jury verdict for breach of contract,[14] the trial court afforded MPO a *163 double recovery for that portion of the Section 1.H damages already reflected as offsets in the April 14, 2014 letter. This was error. "[P]laintiffs are not entitled to a double recovery of compensatory damages." Echols v. City of Riverside , 332 S.W.3d 207, 212 (Mo. App. W.D. 2010). Specifically, the offsets for the reduced Failure to Rent damages, the Attorneys' Fees damages, and the Overpaid Rent damages set forth in the April 14, 2014 letter, which totaled $94,104, were necessarily a part of the damages awarded to MPO by the jury. The offsets totaling $94,104 cannot be considered in calculating the amount to be paid to specifically perform the transactions anticipated by the Settlement Agreement.
We therefore conclude that although MPO was entitled to recover both monetary damages and a judgment specifically performing the Settlement Agreement,[15] it was error to order that the amount to be paid by MPO to Appellants for Davis's 40% member interest and the land should be calculated per the April 14, 2014 letter, and then reduced "by the unpaid judgment on Count I[16] and interest thereon, as set forth above and awarded herein, for $150,000." Instead, the amount MPO is required to be pay Appellants for Davis's 40% member interest and the land should be calculated per the April 14, 2014 letter without regard to the $94,104 in offsets therein described, and then reduced "by the unpaid judgment on Count I[17] and interest thereon, as set forth above and awarded herein, for $150,000."
Point Six is denied in part and granted in part.
Point Seven
In Point Seven, Appellants claim that the trial court erred in refusing a proposed jury instruction-a special interrogatory that would have required the jury to determine the fair market value of MPO's building. The instruction at issue is marked "Interrogatory 18," and reads: "We, the undersigned, find that in February and March, 2014, the fair market value of the Medical Place One Building, excluding the land, was $[blank]."
Appellants' argument that Interrogatory 18 should have been submitted to the jury is not preserved for our review. "Proper preservation of [instructional] error requires that objections be made at the instruction conference and renewed in a motion for a new trial." Syn, Inc. v. Beebe , 200 S.W.3d 122, 135 (Mo. App. W.D. 2006). Appellants did not ask the trial court to submit the Interrogatory 18 to the jury. Instead, when discussing Interrogatory 18 at the jury instruction conference, Appellants proposed to the trial court "that we submit everything but [Interrogatory 18] to the jury and then send them back with *164 [Interrogatory 18] after their verdicts are returned." Appellants acknowledged that the jury's verdict on Appellants' claim for breach of the Settlement Agreement (Verdict D), which claimed that MPO breached the Settlement Agreement by failing to determine an accurate fair market value for the building, would affect whether Interrogatory 18 needed to be submitted. Based on this discussion, the trial court decided that "[t]he plan is, if [Interrogatory 18] is submitted at all, it will be after the verdicts are returned and after it's revisited." After the verdicts were returned, and the jury found in favor of MPO on Appellants' claim for breach of the Settlement Agreement, Appellants obviously had no reason to request submission of Interrogatory 18 submitted to the jury.
It is thus a mischaracterization of the record for Appellants to argue that the trial court refused to submit Interrogatory 18 to the jury. Rather, Appellants first withdrew, and then abandoned Interrogatory 18.
Point Seven is denied.
Point Eight
Appellants' final point on appeal argues that the trial court erred in submitting MPO's claim for breach of the implied covenant of good faith and fair dealing to the jury. Appellants assert that this claim was not supported by the law or by sufficient evidence.
"In order for a case to be submitted to the jury, each and every fact essential to liability must be predicated upon legal and substantial evidence." Nestel v. Rohach , 529 S.W.3d 841, 845 (Mo. App. W.D. 2017) (quoting Ruestman v. Ruestman , 111 S.W.3d 464, 478 (Mo. App. S.D. 2003) ).
MPO's claim for breach of the implied covenant of good faith and fair dealing was submitted to the jury in Instruction No. 10 which asked the jury to determine whether "by failing to participate in efforts to close the settlement agreement, or lack of due diligence, [Appellants] did not cooperate to enable performance and the achievement of the expected benefits of the settlement agreement in good faith and fair dealing." This submission is supported by the law and the record.
Davis made no effort to cooperate with MPO to close on the transactions anticipated by the Settlement Agreement. Davis refused to cooperate because he disagreed with Valbridge's appraisal, even though Valbridge was properly selected pursuant to the terms of the Settlement Agreement, and even though a second appraisal from Integra reached a comparable valuation. The record supports the conclusion that Davis, and by extension DSII, failed to exercise due diligence and failed to cooperate to close on the transactions anticipated by the Settlement Agreement. The record supports the conclusion that Appellants breached the covenant of good faith and fair dealing by "willfully rendering imperfect performance ... or failing to cooperate with the other party's performance." Reliance Bank v. Paramont Props., LLC , 425 S.W.3d 202, 207 (Mo. App. E.D. 2014) (citing Mo. Consol. Health Care Plan v. Cmty. Health Plan , 81 S.W.3d 34, 47 (Mo. App. W.D. 2002) ); see also Koger v. Hartford Life Ins. Co. , 28 S.W.3d 405, 412 (Mo. App. W.D. 2000) ("The implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of the expected benefits is an enforceable contract right.").
In any event, Appellants have not suffered prejudicial error by virtue of the submission of the implied covenant of good *165 faith and fair dealing claim to the jury. As previously noted, the damages awarded by the jury on this claim ($150,000) were redundant and duplicative of the damages awarded by the jury on MPO's claim for breach of the Settlement Agreement. The offset calculations in the Judgment make this clear, as the Judgment credits the amount MPO must pay Appellants to specifically perform the transactions anticipated by the Settlement Agreement by only one monetary award of $150,000.[18]
Point Eight is denied.
Conclusion
Rule 84.14 directs this court in disposing of an appeal to "give such judgment as the court ought to give," and unless justice otherwise requires, to "dispose finally of the case." Given the complexities of the parties' continued business relationships, and the need to ensure specific performance of the Settlement Agreement and the Ground Lease as soon as possible, we exercise our discretion to amend the trial court's Judgment to: (i) modify the mistaken reference to "Count I" in Paragraph A of the Judgment, on page 17, line 6, to read "Count II"; (ii) modify the mistaken reference to "Count I" in Paragraph I of the Judgment, on page 19, line 6, to read "Count II"; and (iii) insert into Paragraph I of the Judgment, on page 19, at line 2, immediately after the reference to "Appendix B," as an addition to that same sentence, the following: ", except that the offsets in the amount of $94,104 described on the third page of Plaintiff's Trial Exhibit 132 shall be disregarded in the calculations as such sums are otherwise included in the unpaid judgment on Count II hereinafter addressed."
The trial court's Judgment as modified by this Opinion is affirmed.[19]
All concur

We view the evidence in the light most favorable to the trial court's judgment. Seck v. Dep't of Transp. , 434 S.W.3d 74, 78-79 (Mo. banc 2014).

This was the period of time during which MPO interpleaded its Ground Lease rent payments into the court. MPO was paying $4,600 per month because that was what Davis (as MPO's managing member) had been paying DSII for some time. As a result, that was the amount Davis and DSII pledged to BMO Harris Bank via the assignment of rents.

The trial court found that Davis's interests aligned with those of DSII, and that it was appropriate for all monies due to or from either Davis or DSII to be treated as a collective right or obligation. Although Appellants allude to this finding, Appellants have not claimed that this finding was erroneous in any of their points relied on, as would have been required to preserve the issue for our review. State v. Steele , 314 S.W.3d 845, 853 (Mo. App. W.D. 2010).

The Judgment's meticulous description of how the parties' relative payment obligations should be netted in order to specifically perform the Settlement Agreement did not address the $150,000 monetary judgment in favor of MPO for breach of the implied covenant of good faith and fair dealing, consistent with the fact that the $150,000 monetary judgments awarded by the jury to MPO for both breach of the Settlement Agreement and breach of the implied covenant of good faith and fair dealing are plainly redundant and duplicative.
The Judgment mistakenly refers to the breach of contract count upon which the jury awarded MPO $150,000 in damages as "Count I" when it should have been "Count II" of MPO's first amended petition.

Consistent with this conclusion, we note the Supreme Court's amendment of Rule 55.27(g)(2), effective January 1, 2012. Prior to its amendment, Rule 55.27(g)(2) provided in pertinent part that "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 55.01, or by motion for judgment on the pleadings, or at the trial on the merits, or on appeal ." (Emphasis added). Following its amendment, Rule 55.27(g)(2) deleted the bold and italicized phrase, making it clear that the defense of failure to state a claim must be timely raised in order to be preserved, and in no manner implicates a trial court's subject matter jurisdiction.

In Paragraph 17 of MPO's first amended petition, MPO described the purchase option set forth in the amended Ground Lease. In Paragraph 25.5 of the first amended petition, in connection with Count I seeking specific performance of the Settlement Agreement, MPO alleged that Davis and DSII failed to perform their obligations under the Settlement Agreement by failing to transfer the deed to the land on which MPO's building was constructed. MPO's prayer for relief under Count I requested the trial court to compel Davis and DSII to transfer the land to MPO.

Appellants' allegation underscores the validity of the trial court's finding that the parties had always contemplated that acquisition of Davis's 40% member interest in MPO would close contemporaneously with MPO's purchase of the land described in the Ground Lease.

Davis is the sole member of DSII. Appellants claim no error in attributing Davis's trial testimony regarding his satisfaction with MPO's exercise of the Ground Lease purchase option to DSII.

In their Reply Brief, Appellants argue for the first time that the trial court was foreclosed from concluding that the purchase option was adequately exercised because of the jury's finding to the contrary. Appellants base this new argument on the verdict director submitted on Appellants' claim for breach of the Ground Lease for nonpayment of rent. MPO successfully sought a modification of the verdict director to add an affirmative defense tail which provided that the jury must find that MPO's nonpayment of rent was a breach of the Ground Lease "[u]nless you believe counterclaimant [DSII] is not entitled to recover because [MPO] had exercised its option to purchase the ground or no ground lease payment was otherwise due ." (Emphasis added). Appellants' Reply Brief reasons that since the jury entered a verdict in favor of DSII for breach of the Ground Lease based on MPO's nonpayment of rent, the jury necessarily rejected both options described in MPO's affirmative defense tail, including the option that MPO "exercised its option to purchase the ground."
Appellants' argument is not preserved for our review, as it is not within the scope of any of their points on appeal, Riggs v. State Dep't of Soc. Servs. , 473 S.W.3d 177, 186 n.18 (Mo. App. W.D. 2015), and was raised for the first time in Appellants' Reply Brief. Salvation Army, Kansas v. Bank of Am. , 435 S.W.3d 661, 670 (Mo. App. W.D. 2014) (holding that arguments raised for the first time in a reply brief will not be entertained).
Nonetheless, we agree that MPO's submission of the aforesaid affirmative defense tail was a risky tactical decision. The trial court had already ruled in connection with Appellants' motions for directed verdict that the issue of Appellants' breach of the Ground Lease had been pleaded, but only for purposes of the equity claims to be tried to the court. And the uncontested evidence established that MPO did not exercise the purchase option in strict compliance with the procedures described in the amended Ground Lease. The jury's rejection of the affirmative defense tail reflects the uncontested evidence. However, the jury's rejection of MPO's argued excuses for nonpayment of rent did not foreclose the trial court's consideration of whether Appellants breached the Ground Lease. The trial court remained free to determine that MPO's nonconforming exercise of the Ground Lease purchase option was nonetheless legally adequate to require Appellants to close on the exercised purchase option because Appellants waived strict compliance with the procedures described in the Ground Lease. See Comput.Sales Int'l, Inc. v. Family Guardian Life Ins. Co. , 860 S.W.2d 826, 831 (Mo. App. E.D. 1993) (holding that one party's method of notice served the purpose of the contract's notice provision even though the method of notice was not in literal conformity with the notice requirements); Pilla v. Estate of Pilla , 689 S.W.2d 727, 730 (Mo. App. E.D. 1985) (holding a party can waive strict compliance with contract provisions describing procedure to be followed in exercising an option).
As a final observation, the new argument raised in Appellants' Reply Brief is inherently inconsistent with Appellants' second point on appeal, which claims that Appellants' constitutional right to trial by jury was deprived when the trial court, and not the jury, determined that Appellants breached the Ground Lease by failing to close on the purchase option. It cannot be that the jury decided this issue as to foreclose the trial court's contrary finding, while at the same time Appellants were deprived of the right to have a jury decide this issue.

Points Four and Five also assert that the trial court's ruling denying remedies for MPO's breach of the Ground Lease for nonpayment of rent, which turned on a finding that Appellants were the first to breach the Ground Lease, depended on a claim over which the trial court did not have subject matter jurisdiction (the subject of Point One on appeal), and deprived Appellants of their constitutional right to trial by jury (the subject of Point Two on appeal). Our resolution of Points One and Two controls the resolution of these multifarious claims of error reasserted in Points Four and Five on appeal.

Although Appellants pleaded for attorneys' fees as part of their breach of contract counterclaim, Appellants ultimately requested an award of attorneys' fees in connection with their declaratory judgment claim.

Point Six on appeal is multifarious, as it argues more than one error as a basis for reversal. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." Peters v. Johns , 489 S.W.3d 262, 268 n.8 (Mo. banc 2016). Nevertheless, we exercise our discretion to review Point Six and resolve the issues on the merits. Id.

The Failure to Rent damages, the Attorneys' Fees damages, and the Overpaid Rent damages contemplated in Section 1.H of the Settlement Agreement only total $134,147, although that same Section 1.H anticipated that interest would accrue on the unpaid amounts. Appellants do not contend that the jury's award was not supported by the evidence.

We remind that the record establishes that the damages awarded to MPO for breach of the Settlement Agreement and for breach of the implied covenant of good faith and fair dealing were redundant, permitting MPO but one offset in the amount of $150,000 against the amount it is required to pay Appellants to specifically perform the transactions anticipated by the Settlement Agreement.

We note that in addition to this being the correct result because money damages did not compensate MPO for the fact that Appellants' failure to close left the parties ensnared in business relationships they intended to sever, it is also the case that by directing performance of the Settlement Agreement and Ground Lease purchase option pursuant to the terms of a letter that presumed a timely closing, MPO was deprived of the enhanced amount of damages permitted by Section 1.H of the Settlement Agreement in the event of an untimely (or no) closing.

See supra note 4, noting that the Judgment's reference to Count I should have been to Count II.

See supra note 4, noting that the Judgment's reference to Count I should have been to Count II.

MPO acknowledged as much at trial when defending against Appellants' motion for directed verdict on the claim of implied covenant of good faith and fair dealing, stating that there "may be a merger of the remedies [referring to the breach of contract claim] so that we can't have a duplicative recovery."

The Judgment we are affirming affects title to real estate, as it orders the specific performance of a contractual obligation to convey the land described in the Ground Lease from DSII to MPO. As such, both the Judgment and this Opinion affect title. "When a judgment affects real estate, it must describe the land with enough certainty to support a later conveyance of the property." Landau v. Weil , 87 S.W.3d 909, 910 (Mo. App. E.D. 2002) ; see also US Bank, N.A. v. Smith , 470 S.W.3d 17, 28 (Mo. App. W.D. 2015). The Settlement Agreement executed by the parties includes the legal description of the land subject to the Ground Lease purchase option. The legal description of the land subject to the Ground Lease purchase option is as follows:
A tract of land being part of DOUGLAS SQUARE CENTER FOURTH PLAT LOTS 13-17, a subdivision in the City of Lee's Summit, Jackson County, Missouri, being more particularly described as follows:
All of Lot 14, of said DOUGLAS SQUARE CENTER FOURTH PLAT LOTS 13-17, and all that part of Lot 16 as described as follows, Beginning at the Northeast corner of said Lot 16; Thence South 22°45'18" E, along the Easterly line of said Lot 16, 65.00 feet; Thence S 67°14'42" W, 294.32 feet, to a point of the Westerly line of said Lot 16, Thence N 01°41'17" E, along said Westerly line of said Lot 16, 71.40 feet; Thence N 67°14'42" E, along the Northerly line of said Lot 16, 264.78 feet, to the Point of Beginning.